[No. 6158. Decided September 24, 1906.]

Thomas Berg, *Respondent,* v. Seattle, Renton & Southern Railway Company, *Appellant.*[1]

Master and Servant—Injury to Servant—Fellow Servants. The motorman and conductor on a street car are fellow servants of the motorman and conductor on another car of the same line going in the opposite direction, so that one cannot recover for injuries received in a collision through the neglect of the other to turn on the lights of a block system on entering the block, where it appears that the line was a single track line twelve miles long, with but a few cars in service, that the motormen were constantly meeting on schedule time fixed by the company and their duties were co-ordinate, so that they necessarily knew the character, habits, and capacity of each other, and so had opportunity of exercising mutual influence upon one another.

1Reported in 87 Pac. 34.

SAME—NEGLIGENCE OF MASTER—APPLIANCES—STREET RAILWAY BLOCK SYSTEM. A charge of negligence, made by a motorman against a street railway company for not maintaining a sufficient block system, is not sustained where the plaintiff testified that the collision would not have occurred if the motorman on the other car had obeyed the rules to turn on his lights before entering the block, and where the plaintiff had worked on the system for eighteen months and made no complaint of the system.

FULLERTON, HADLEY, and DUNBAR, JJ., dissenting.

Appeal from a judgment of the superior court for King county, Hatch, J., entered December 22, 1905, upon the verdict of a jury rendered in favor of the plaintiff for personal injuries sustained by a motorman in a collision on a street railway. Reversed.

*John P. Hartman*, for appellant. The duty of the master to furnish a safe place is not an absolute one, but depends upon the character of the employment and the servant's appreciation of the risk. *Miller v. Moran Bros.*, 39 Wash. 631, 81 Pac. 1089. The duty of employing servants who are never negligent is no more absolute than is the duty of furnishing a safe place. *Baltimore & Ohio R. Co. v. Baugh*, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772. An employee in entering the employ of a railway company voluntarily undertakes the risk of injury from the negligence of others who are engaged with him in the service. *Randall v. Baltimore & Ohio R. Co.*, 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003; *Michigan etc. R. Co. v. Dolan*, 32 Mich 510; *Grim v. Olympia Light & Power Co.*, 42 Wash. 119, 84 Pac. 635. The act of turning on the signal lights was a detail of the employment, and the giving of signals has always been held to be a detail of the work. 2 Labatt, Master & Servant, § 607; *Grattis v. Kansas City etc. R. Co.*, 153 Mo. 380, 55 S. W. 108, 77 Am. St. 721, 48 L. R. A. 399; *Stevick v. Northern Pacific R. Co.*, 39 Wash. 501, 81 Pac. 999; *Miller v. Southern Pac. R. Co.*, 20 Ore. 285, 26 Pac. 70; *St. Louis etc. R. Co. v. Needham*, 63 Fed. 107. The disobedience of rules was an

act of negligence of fellow servants, for which the master is not liable. 2 Labatt, Master & Servant, par. 608.

*Martin J. Lund* (*Walter S. Fulton*, of counsel), for respondent, contended, among other things, that the fellow-servant doctrine ought not to be extended. 2 Labatt, Master & Servant, pp. 1235, 1324; Whittaker's Smith, Negligence, 138; Shearman & Redfield, Negligence (4th ed.), 303; *Gregory v. Hill*, 8 Scots Rev. Rep. (3d series) 413; *Little Miami R. Co. v. Stevens*, 20 Ohio 416; *Burke v. Norwich etc. R. Co.*, 34 Conn. 474; *Parker v. Hannibal etc. R. Co.*, 109 Mo. 362, 19 S. W. 1119, 18 L. R. A. 802. The doctrine applies in this state only where the injured servant, either by commission or omission, contributed to the injury. *Hammarberg v. St. Paul etc. Lum. Co.*, 19 Wash. 537, 53 Pac. 727. The motormen were not fellow servants. *Cooper v. Mullins*, 30 Ga. 146, 76 Am. Dec. 638; *Bateman v. Peninsular R. Co.*, 20 Wash. 133, 54 Pac. 996; *Uren v. Golden Tunnel Mining Co.*, 24 Wash. 261, 64 Pac. 174; *Shannon v. Consolidated etc. Min. Co.*, 24 Wash. 119, 64 Pac. 169: *Brabon v. Seattle*, 29 Wash. 6, 69 Pac. 365; *Howe v. Northern Pacific R. Co.*, 30 Wash. 569, 70 Pac. 1100; *Conine v. Olympia Logging Co.*, 36 Wash. 345, 78 Pac. 932; *Kentucky Cent. R. Co. v. Ackley*, 87 Ky. 278, 8 S. W. 691, 12 Am. St. 480; *Louisville R. Co. v. Craven's Adm'r*, 9 Bush. (Ky.) 566; *Louisville etc. R. Co. v. Edmund's Adm'r*, 23 Ky. Law 1049, 64 S. W. 727; *Northern Pac. R. Co. v. O'Brien*, 1 Wash. 599, 21 Pac. 32; *Keating v. Pacific Steam Whaling Co.*, 21 Wash. 415, 58 Pac. 224; *McDonough v. Great Northern R. Co.*, 15 Wash. 244, 46 Pac. 334; *Ogle v. Jones*, 16 Wash. 319, 47 Pac. 747; *Myrberg v. Baltimore etc. Min. Co.*, 25 Wash. 364, 65 Pac. 539; *Allend v. Spokane Falls etc. R. Co.*, 21 Wash. 324, 58 Pac. 244; *Goldthorpe v. Clark-Nickerson Lum. Co.*, 31 Wash. 467, 71 Pac. 1091; *Bailey v. Cascade Timber Co.*, 32 Wash. 319, 73 Pac. 385; *Grout v. Tacoma Eastern R. Co.*, 33 Wash. 524, 74 Pac. 665; *Mor-*

*rison v. Northern Pac. R. Co.*, 34 Wash. 70, 74 Pac. 1064; *Hammarberg v. St. Paul etc. Lum. Co.*, 19 Wash. 537, 53 Pac. 727; *Chicago City R. Co. v. Leach*, 208 Ill. 198, 70 N. E. 222, 100 Am. St. 216; *Sams v. St. Louis etc. R. Co.*, 174 Mo. 53, 73 S. W. 686, 61 L. R. A. 475. The block system was not reasonably safe, or as safe as the double block system, and its use was a failure of the defendant to furnish reasonably safe appliances. 1 Labatt, Master & Servant, 628; *Mather v. Rillston*, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464; *Howe v. Northern Pac. R. Co.*, 30 Wash. 569, 70 Pac. 1100; *Houts v. St. Louis Transit Co.*, 108 Mo. App. 686, 84 S. W. 161; *Conine v. Olympia Logging Co.*, 36 Wash. 345, 78 Pac. 932; *Pearson v. Federal Min. etc. Co.*, 42 Wash. 90, 84 Pac. 632; *Christianson v. Pacific Bridge Co.*, 27 Wash. 582, 68 Pac. 191.

MOUNT, C. J.—Action for personal injuries. Plaintiff recovered a judgment for $5,000. Defendant appeals.

The appellant operated a line of electric street railway between Seattle and Renton, a distance of twelve miles. The line consisted of a single track, with numerous switches and sidetracks or turnouts. There were but two through cars between Seattle and Renton. There were four or five local cars running between Seattle and Rainier Beach, which was a station some eight miles out of Seattle. The respondent was employed as a motorman on one of the through cars. These two through cars were called express cars by reason of the fact that they were not required to stop at all of the stations and street crossings, and because it was the duty of the local cars, which stopped at each street crossing, to turn out on the sidings in order that the through cars might pass them. All the cars ran on schedules fixed by the railway company. The railway company had constructed a block-light system, known as a single block system, between Norman street and Lane street in the city of Seattle. The distance between these two

2—44 WASH.

streets was sixteen hundred and sixty-five feet. There were sidings at Norman street and at Lane street, but none between these points. The grade was not level, but the railway line was straight between these points, so that a car could be seen in the daytime from one end of the block system to the other, except in foggy weather. Norman street was further south from Seattle than Lane street. Renton was in a southerly direction from Seattle.

The block-light system consisted of five poles about equal distance apart, one pole being at Lane street, one at Norman street, and the other three between those two extremes. On each of these poles were two red incandescent electric lights. When the lights were turned on at Norman street by means of a rope or lever, one red light burned on the north side of each pole through to Lane street. When the lights were turned on at Lane street, they burned on the south side of each pole through to Norman street. The lights could be turned off only at the point where they were turned on. These lights were for use in the nighttime and in foggy weather. The motormen on all cars were required to turn on the lights when entering the block, and the next car back was required to turn the lights off. It was the duty of conductors to see that the motormen turned the lights on and off. On the morning of October 25, 1904, respondent, as motorman on his car, left Renton for Seattle. When he arrived at Norman street he says he was a little late, a minute or two. The morning was very foggy. He found the lights turned to the north, indicating that a car was preceding him through the block. The lights were not burning to the south. The conductor on respondent's car told respondent to proceed through the block. Respondent thereupon proceeded at the rate of about eight miles per hour and, at about the middle of the block, after he had gone a distance of eight hundred and seventy feet, he collided with a car coming south, and was severely injured. The motorman on the southbound car had neglected to turn on his lights south, and had proceeded

with those lights not burning. Respondent stated that, if these lights had been thrown on, he would have seen them and the accident could not have happened. The motorman on the southbound car testified that he did not turn his lights on because the conductor on the car preceding respondent's car had just come through the block and changed to the car southbound, and said that the north lights were his lights thrown on by him as he had just come through the block.

There was dispute at the trial as to what the rules of the company were with regard to the use of the lights, the company claiming that the motormen were prohibited from passing a burning light which such motorman himself had not turned on, while respondent's evidence was to the effect that motormen were only prohibited from running on lights pointing against the way his car was going. We must assume, for the purposes of this case, that the rule of the company was as stated by the plaintiff. The question is then squarely presented, whether the failure of the conductor and motorman, whose duty it was to turn the lights on, which they neglected to do, rendered the company liable to the respondent. In other words, were the motorman and conductor on the one car fellow servants of the motorman and conductor on the other car?

It seems to us that there can be no escape from the conclusion that they were fellow servants. They were each engaged in the same common employment, meeting and passing each other frequently and associating together every day. This case cannot be distinguished from the case of *Grim v. Olympia Light etc. Co.*, 42 Wash. 119, 84 Pac. 635, except in immaterial particulars. It is true, in the *Grim* case there was no fixed schedule of running time, and the motormen themselves arranged the places of meeting; and it is also true there were no conductors in the *Grim* case, and that the motormen had sole charge of their cars. These are the only facts in which the *Grim* case differs from this case in the point at issue. The fact that there was no fixed schedule was

one of the facts which was claimed as negligence of the company in the *Grim* case. But, under the circumstances of that case, no fixed time was practicable or could be established. In this case there was a fixed schedule for all cars, and it is not claimed that the motormen were incompetent or inexperienced or that they did not know the time schedule for each car. The number of cars was not great and the motormen and conductors were required to know, and did know, the schedule time of each car. So the fact that there was a schedule was in favor of the appellant and not against it. While there was a conductor in charge of each car in this case, the conductor's authority over the motorman extended only to starting and stopping of the cars and in collecting fares. In regard to the speed of the car, the handling of the lights, and meeting cars and the like, the duties of the motormen and conductors were coordinate. It is conceded that it was the duty of the motorman, when he entered the block, to turn on the light without any order from the conductor. But it was the duty of the conductor to notice the light and see that the motorman did his duty in that respect. If one was negligent, both were. There is, therefore, no question of superior servant in regard to turning on the light, which is conceded to have been the act of negligence which caused the collision and injury.

In *Howe v. Northern Pac. R. Co.*, 30 Wash. 569, 70 Pac. 1100, we held that a brakeman was not a fellow servant with a conductor on his train, because in that case the brakeman was subordinate to the conductor and was not required to place signals except upon orders of the conductor. In that case the superior servant doctrine was therefore applicable and was sustained. In *Conine v. Olympia Logging Co.*, 36 Wash. 345, 78 Pac. 932, we held that a signalman was not a fellow servant with the engineer of a logging engine, where the master had furnished no means of communication from the engineer to the signalman. That case can have no controlling influence in this case, because here the master had

provided means of communication which was sufficient for
the purpose and which appliance was not used by either serv-
ant. In the case of *Northern Pac. R. Co. v. O'Brien,* 1 Wash.
599, 21 Pac. 32, this court held that a conductor and en-
gineer on a railway train were not fellow servants with em-
ployees on a work train, but this rule had not been applied
to street railway cases. The reasons therefor are given in
*Grim v. Olympia Light etc. Co., supra.* A large number of
cases are cited where we have permitted one servant to re-
cover from the master by reason of negligence of another
servant. But those have been cases where the negligence
was the omission of some positive duty of the master. It is
unnecessary for us to cite these cases here, or to review them
at length for, in such cases as well as cases not cited, we have
uniformly recognized the rule that the master is not liable
for injuries resulting to a servant by the negligence of a
fellow servant. *Millett v. Puget Sound etc. Works,* 37 Wash.
438, 79 Pac. 980 ; *Stevick v. Northern Pac. R. Co.,* 39 Wash.
501, 81 Pac. 999.

The questions usually presented have been whether the
facts in particular cases bring the injured party within the
rule of fellow servant. In determining who were fellow
servants we have said that servants must not only be engaged
in a common employment, but must have opportunity to use
precautions against each other's negligence. *Grim v. Olym-
pia Light etc. Co., supra,* and cases there cited. In this case
the motormen were engaged in the same common employ-
ment, that of operating street cars over the same line. They
necessarily met each other every hour of the day, because the
time from Seattle to Renton consumed but forty-seven min-
utes. They took their cars from the same barn, and the same
rules were furnished to each. There was such coassociation
and cooperation in the same line of employment as that each
one necessarily knew the habits and capacity of the other and
had opportunity of exercising mutual influence upon the
other. This made them fellow servants within the rule which

we have heretofore laid down. It is true that one of the allegations of negligence in the complaint was that the master failed to furnish a sufficient block system upon the block where the collision occurred, but the respondent testified that, if the motorman on the southbound car had turned his lights south when he entered upon the block, the accident could not have occurred, because respondent in that event would have seen the lights and remained at Norman street or returned to that point. It was nowhere claimed that the light system was defective in its construction or operation, and the statement that the accident could not have happened if the light had been used indicates that the system was sufficient for the purposes for which it was intended, and was reasonably safe, which is all that is required. *Chicago etc. R. Co. v. Driscoll,* 176 Ill. 330, 52 N. E. 921. The respondent knew the system; he had worked under it for about eighteen months, and had made no complaints concerning it. He knew the rules required the motorman to turn on the lights on entering the block. The rules and system were for the protection of the motormen as well as for the protection of passengers. The appliances were reasonably safe, and it was the duty of the motorman to use them for the purpose of preventing collisions and delays. Under the evidence of respondent above stated, assuming that he was correct in his construction of the rules that it was the duty of the motorman on the southbound car to turn his light, it was the duty of the trial court to take the case from the jury upon the motion of the appellant, upon the ground that the act of negligence directly causing the collision was the act of a fellow servant. It may be said, in justice to the trial court, that the case of *Grim v. Olympia Light etc. Co.* had not been decided when this case was tried.

The judgment is reversed, with directions to the lower court to dismiss the action.

CROW, ROOT, and RUDKIN, JJ., concur.

FULLERTON, HADLEY, and DUNBAR, JJ., dissent.