[No. 8077.  Department Two.  June 8, 1909.]

FRANCIS L. JOCK, *Respondent*, v. COLUMBIA & PUGET SOUND RAILROAD COMPANY, *Appellant*.[1]

MASTER AND SERVANT—FELLOW SERVANTS—COMMON EMPLOYER.  A common laborer, directing and assisting in the unloading of a car of lumber, is a fellow servant as to another laborer who was caught by the falling of the lumber upon chopping off the last of the side stakes holding the lumber; since they were engaged in a common simple service, each assisting the other in the details of the work, and the injured servant had opportunities to protect himself against the alleged negligence of the other in removing props supporting the lumber.

SAME—VICE PRINCIPALS—SUPERVISION—DETAILS OF WORK.  The direction by a gang foreman to one common laborer to go with an-

[1]Reported in 102 Pac. 405.

other who would tell him what to do in the unloading of cars of lumber, does not make such other a vice principal, as to incidental acts and details while working together in unloading the lumber.

MASTER AND SERVANT—NEGLIGENCE—EVIDENCE—SUFFICIENCY. In an action by an employee for injuries sustained in the fall of lumber through the alleged negligence of another servant in removing a prop, there is not sufficient evidence of the negligent act to warrant a verdict for the plaintiff, where no one saw the prop removed, the plaintiff merely testifying that the prop was in place when he started to work, and after the accident, and that, at a time while suffering intensely, he saw it on a near-by pile of lumber; and the removal of the prop was denied and no attempt was made to identify it.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—UNLOADING CAR OF LUMBER. A laborer, unloading a car of lumber under the direction of another common laborer, is guilty of contributory negligence, precluding any recovery, where, after removing the side stakes at either end of the car, and being unable to remove the center stake, he chopped it off, and the lumber then slid from the car and fell upon him, although he had had no previous experience.

Appeal from a judgment of the superior court for King county, Albertson, J., entered October 31, 1908, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee unloading a car of lumber. Reversed.

*Farrell, Kane & Stratton,* for appellant.

*John T. Casey (Heber McHugh,* of counsel), for respondent.

DUNBAR, J.—This is a personal injury action. At the time of the accident complained of, the defendant railroad company, the appellant in this case, operated a short railway in King county. The gang foreman of the company was one C. A. Bassett. He it was who employed plaintiff as a common laborer a short time before the accident. There was also one Williams in the employ of the company in the capacity of a common laborer. While plaintiff and Williams were working together unloading a car of lumber, the plaintiff was injured by lumber falling upon him, breaking his leg so that ampu-

tation became necessary. The action was brought against the Pacific Coast Company and the Columbia & Puget Sound Railroad Company, but, at the time of the trial, was dismissed as to the Pacific Coast Company. The plaintiff testified that he had told Mr. Bassett that he was inexperienced so far as unloading cars was concerned, but that Bassett told him to go with Williams, who would direct him what to do. This was the substance of the testimony on that point. As to the testimony concerning the accident, the plaintiff testified as follows: After a statement concerning the removal of a load of lumber which Williams had pointed out, he said:

"Before I got that done Mr. Williams left the place. He remained away probably ten minutes—I was standing by the car waiting for him when he returned. He told me to drive out the stake at the south end of the car with an axe. The stake came out, and I steadied it so it wouldn't fall on us. Mr. Williams took the stake and moved it a few feet from the corner and let it rest against the timbers.

"Q. (By the court)  Did it furnish any support to the lumber in the car in that position?

"A. Yes, sir. It supported it. It appeared to be a way of unloading. The car appeared perfectly safe without those stakes. Then we went to the center stake and tried to drive that out and it wouldn't come, so as we did so, Mr. Williams said, 'We will get that maul,' and on his way to the maul— that was on the south end of the car—he took the stake which was up against the car, which I thought acted as a brace, and carried it away. And I had asked him once before if he knew how to unload lumber. He said, 'Yes,' and I just repeated the question; asked him if he knew how. He replied that he had unloaded them before. We drove at the middle stake; it didn't come; so we moved up to the stake at the north. It came out and was placed up where the first stake had been placed, against the car, resting under the flanges of the timber about an inch. Then Mr. Williams told me to cut off the stake just above the clasp.

"Q. The second clasp, after he put it against the car, did you have anything to do with it?

"A. I took a glance at the car and it appeared safe and I

naturally thought it (the stake) was a protection and safety. I merely steadied the stake to see that it was solid against the side of the car. Then he pointed to the place where the middle stake had to be cut. I cut the stake. I chopped the stake about half off. While I was chopping, the dust was falling from the car and I pulled my hat over my eyes. The wind was blowing. It was a windy day. The next I heard was a scream, 'Watch out,' and at the very instant I heard the 'watch out,' the middle stake gave way. The axe hit me on the knee, and then the timbers slid from the side of the car, from bottom and top. Both were coming at once. It was impossible for me to go underneath the car. The only hope was to go right out. I made best effort to get out. As I was pretty near out of the way, my left foot got caught with the top plank, and my leg was all broken, and crushed about middle ways the knee, and all the foot was completely crushed. The right—under the knee it was broken there, and I think turned on the joint and broken above the knee, and then where it was amputated. While lying on the ground after the injury for about two hours, I noticed that one tier of planks had completely slid off the car. I noticed that the stake I had cut was underneath the timbers; that it was the only one underneath the timbers. Two were in the pile I had laid to one side. The rubbish pile was about 20 feet from the side of the car. There was no one else around the car but Mr. Williams and myself. I didn't see him take that stake away that was placed against the side of the car, when I started chopping the middle stake. Mr. Williams did not take that stake away after the lumber fell. No one else did either."

There was some repetition both in direct and cross-examination, but the above, taken from the respondent's brief, is substantially the testimony on the material points in the case. The complaint is very brief and simply charges negligence in causing the stakes and braces, which were supporting the lumber and timber of the car, to be removed and taken away during the time that plaintiff was cutting at the center stake. The answer denied allegations of negligence on the part of the defendant, and alleged that Williams and the plaintiff were fellow servants; alleged negligence on the part

of the plaintiff, and assumption of risk.  At the close of
plaintiff's testimony, the defendant challenged the sufficiency
of the testimony, which motion was overruled.  The same
motion was made and overruled at the close of the whole case.
The case was given to the jury, and a verdict rendered for
$13,000.  Judgment was entered, and appeal follows.

It is claimed by the appellant that the circumstances of
this case plainly show, that the respondent and Williams were
fellow servants; that respondent was guilty of contributory
negligence, and that the evidence was not sufficient to sustain
a verdict in any particular.  It is contended by the respond-
ent that many of the cases relied upon by appellant are not in
harmony with the principles announced by the decisions of
this court, and this to a certain extent is true.  But, while
this court has, as compared with many other courts, limited
the application of the doctrine of master and servant, and
while it desires to adhere to the policy heretofore announced
in this class of cases, an intelligent analysis and construction
of the cases decided will not warrant the conclusion that Wil-
liams was the vice principal of the appellant in the transac-
tion involved.  But it will appear that in each and every case
decided there was some element or circumstance tending to
establish the responsibility of the master which does not ap-
pear in this case, and that the logic of the opinions in those
cases would not tend to establish the relation of master and
servant in a case of this kind.

There are many considerations which enter into the de-
termination of whether laborers in given cases are fellow
servants, but one of the most important considerations is
whether the servant receiving the injury, by reason of the
negligent act of a co-laborer, was in a position in which he
could have protected himself against such negligent acts; or,
as expressed in *Cooper v. Mullins*, 30 Ga. 146, 76 Am. Dec.
638, where in answer to the claim of the employer that an ex-
ception existed to the general rule that whoever is injured
by the negligence of a servant in his master's business is en-

titled to redress from the master, by reason of public policy, discussed in that case, it was said:

"This reason can have no application to employees whose situations allow them no connective influence over each other. . . . Nor can it be extended to other employees who for any cause are not in a situation to exert such an influence on their fellows. It follows, therefore, that the cases to which this exception applies are only those where the servant receiving the injury is engaged with the servant inflicting it in a common business where he has an opportunity to exercise a preventive care over his negligence."

Of course, the logical inference was that, where the opportunity mentioned did exist, the relation of a fellow servant would be established. This court has acknowledged the exception mentioned by the Georgia court, in many cases, though deciding the cases adversely to the master for the express reason that the cases under consideration were not brought within the exception. Thus, in *Hammarberg v. St. Paul & Tacoma Lumber Co.*, 19 Wash. 537, 53 Pac. 727, the Georgia case, *supra*, was made the basis of the decision, by adopting the distinction therein expressed, the court saying:

"Applying these principles to the case at bar, it seems to us that the millwright, in this instance, could in no sense be considered a fellow servant of the sawyer below. He was not in the same employment. He was not engaged in manufacturing lumber, which was the business of the mill. The sawyer had no opportunity to use precautions against his negligent acts."

In speaking further of the doctrine of fellow servant, the court, at page 539, said:

"Its original application was based upon the plainest principles of justice, and the doctrine was applied to persons who were working in a common employment and who had an opportunity to observe, if not to a certain extent control, the actions and methods of those with whom they were working and who were in reality, under the plainest definition of the term, their fellow servants. Thus, so far as rural employments were concerned, if two men were engaged in loading a wagon with hay, and it was so overloaded or so unskill-

fully loaded that it toppled over, thereby injuring one of the laborers, the master could not justly be held liable; and the doctrine of fellow servants, for obviously just reasons, was applied, for the laborers had in hand and under their control the performance of this work and were in a sense both of them agents or vice principals of the master. In manufacturing employments it was the same. The doctrine was applied simply and humanely on the theory that, standing on a level with each other, both as to employment and authority, they had notice which the master necessarily could not have of the dangers liable to result from the action of the workers; and, in thus noticing and continuing in the employment without an attempt to rectify it, to them it was a disclosed or apparent danger, the perils of which they assumed, . . ."

This case, it seems to us, falls squarely within the illustration given in that case where the doctrine of fellow servant should apply. The two men were working together. They were both under a common employment; both conceded to be common laborers. They were conversing and counseling about the manner of unloading the lumber. One of them steadied the stakes to keep them from toppling over, while the other one cut them off. It was a simple service which was to be rendered. There was no machinery involved, intricate or otherwise. The respondent could see clear around the whole transaction. He was working side by side with his co-laborer, each assisting the other in the details of the work, and in a position where he could have protected himself against the negligence of his co-laborer if he had paid any heed to him. The doctrine announced above was also approved by this court in *Conine v. Olympia Logging Co.*, 36 Wash. 345, 78 Pac. 932; *Bateman v. Peninsular R. Co.*, 20 Wash. 133, 54 Pac. 996, and *Uren v. Golden Tunnel Min. Co.*, 24 Wash. 261, 64 Pac. 174, which were decided against the master for the reason that the facts did not show opportunity to use precaution against the negligence of the co-laborer.

Nor do we think that the announcement made by the gang

foreman was sufficient to constitute Williams a vice principal. It may possibly have constituted him a vice principal for general directions, or for pointing out to respondent where and what his work was. This, evidently, was all that was intended. But there is no allegation or proof that respondent was sent to a dangerous place by Williams. On the contrary, the accident happened, according to the respondent's own testimony, by reason of an independent act of Williams, entirely incidental to and a detail of the transaction, and which was peculiarly the act of a fellow servant for which the master could not be held responsible. Labatt, Master & Servant, §§ 586, 587, 588.

The complaint is based exclusively on the alleged negligence of Williams in removing the prop. The testimony on this proposition is not sufficient to sustain a verdict. It was purely a surmise on the part of the respondent. He simply testified that, when he last noticed the prop, it was under the edge of the lumber at the south end of the car; that he did not see Williams remove it, but that after he was injured, and while he was still pinioned by the lumber and suffering from this fearful accident, with his foot mashed and his leg broken above and below the knee, he noticed that the stake he had cut was underneath the timber which had fallen off the car, and that the other two stakes were on a rubbish pile about twenty feet from him. He did not see Williams remove the stake. Williams did not tell him that he removed it. No circumstances were related tending to show that Williams did remove it, or that he would have any reason or motive for removing it. In fact, if he put it there for the purpose of sustaining the lumber until the middle stake was cut, he would naturally leave it there until the purpose was effected. Neither was there any attempt made to especially identify the stake he saw on the lumber with the stake that was used as a prop. There was no description whatever given of it, and no reason assigned why he thought it was the particular stake. If it was the same stake, it may have fallen over by reason of the

jar made by the axe, without any action whatever on the part of Williams; or Williams may have picked it up and thrown it on the lumber pile after the accident. But the testimony simply shows that, when he started to cut off the middle stake, the prop was at the south end of the car, and that, when he recovered from the shock of the hurt and took a view of the premises, the prop was on the lumber pile. Outside of the fact that Williams testified positively that he did not remove the stake, the testimony of the respondent did not make a *prima facie* case on that proposition, and the jury could not reach the conclusion that Williams did remove the stake, without resorting to guesswork and surmise. Of course, it is well established that the jury is the judge of the credibility and reasonableness of the testimony. But it is just as well established that verdicts must be based on facts proven, and not on speculation and surmise.

From all the circumstances of the case, we also think that the respondent was guilty of gross contributory negligence in the manner in which he attempted to unload the car. It is true that he testified he had no experience in unloading cars, but the testimony shows that he was a man of several years' experience in similar kinds of work; and without experience, any one who understands the natural laws and forces which surround us and which we are compelled to take notice of every day, ought to have known better than to release the lumber at the ends before taking out the stake in the center. If the stake served to hold the lumber on the car at all, there could be but one result from such a proceeding. Even if the prop at the south end had remained, it would not have prevented what happened; for when the center prop was removed, the lumber being released at the north end would have fallen just the same if it was resting on that prop. Its position could not be maintained by propping it at one end. Or even if respondent could be justified in presuming that it could, it was negligence to remove the permanent support

and substitute one that was not so efficient, and one that a jar might, and probably did, displace.

Unfortunate as was the accident and lamentable as the result proved to be, we are compelled to hold that no cause of action has been proven. The judgment is therefore reversed, with instructions to dismiss the action.

RUDKIN, C. J., CROW, MOUNT, and PARKER, JJ., concur.