[No. 8480.   Department One.   April 4, 1910.]

ALBERT MAGNUSON, *Respondent*, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, *Defendant*, C. J. JOHNSON, *Appellant*.[1]

MASTER AND SERVANT—NEGLIGENCE—APPLIANCES—EVIDENCE—SUFFICIENCY. In an action for injuries to an employee engaged in loading a blast, negligence of the master in failing to furnish a suitable wooden rod to tamp the charge is not shown by evidence that such a rod was provided but broke, and that the employees then used an iron drill which caused an explosion, without calling upon the master for another suitable appliance.

SAME—FELLOW SERVANTS—ASSISTANCE IN LOADING BLAST. Where plaintiff's foreman in charge of drilling two blasting holes about fifteen feet apart, desiring to load both holes at one time, called in a new man, by reason of his experience, to assist the plaintiff in loading one hole while the foreman and others loaded the other hole, the new man and the plaintiff are fellow servants, the former giving no orders or requests that might not be given by fellow servants; and the plaintiff assumes the risks of the other's negligence in using an iron drill in the process of loading.

SAME—VICE PRINCIPALS—ACTS OF FOREMAN. The consent of a foreman to the use of an iron drill in the process of loading a blast does not render the master liable for negligent use of the drill, where the plaintiff's fellow servant was instructed as to the proper use of the drill, but made a mistake of judgment in using it.

Appeal from a judgment of the superior court for King county, Tallman, J., entered June 15, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee through the premature explosion of a blast. Reversed.

[1]Reported in 107 Pac. 1043.

*Graves & Murphy,* for appellant.

*Martin J. Lund* and *Vince H. Faben,* for respondent.

FULLERTON, J.—Albert Magnuson, as plaintiff, brought this action against the Chicago, Milwaukee & St. Paul Railway Company and C. J. Johnson to recover damages in the sum of $30,000 for personal injuries received by him from the premature explosion of a blast while he was engaged as a laborer on the work of construction of the road of the defendant railway company. On the trial, at the conclusion of the plaintiff's evidence in chief, the case was nonsuited as to the defendant railway company and continued as to the defendant Johnson alone, resulting finally in a verdict and judgment against him in the sum of $13,750.

There is no serious dispute over the principal facts governing the case. The railway company was engaged in constructing its road through the state of Washington. The appellant, Johnson, was building the road as an independent contractor, from the west portal of the tunnel in the Cascade mountains eastward to the city of Ellensburg. He had in his employ a number of men divided into a number of camps working at different places along the route. The appellant had a superintendent of construction who had general charge of all the work. Each of the several camps was in charge of a foreman subject to the direction of the superintendent of construction. At camp 5, one Matt Johnson was foreman. The respondent was employed by the appellant in the early part of March, 1908, to work on the road, as the respondent says, as a common laborer. He was taken to camp 5 and put to work under Matt Johnson in a rock cut as a member of the drilling crew, the duties of this crew being to drill blast holes in the rock.

Just prior to the end of the month of March, the crew had sunk two holes in the rock some twenty or twenty-five feet deep, and had sprung them preparatory to charging them with dynamite. The work of charging the holes was under

the immediate supervision of Matt Johnson, and was begun in the morning of March 31. It appears that, prior to that time, a mucking crew had been working in and near this cut in the nighttime under the direction of one Chris Anderson. This shift had been discontinued and Anderson was brought by Johnson to assist in loading the holes, his desire being, as he expressed it to respondent, to load them both at the same time. The work was begun with Johnson and one of the drilling crew at one hole, and Chris Anderson and the respondent at the other. After the work had progressed for some two hours, the hole at which Johnson had been working became clogged so that he was no longer able to push the dynamite down to the bottom of the hole, and he called for the churn drill to remove the obstruction. This drill was like an ordinary drill formed from a steel bar, except that it was some twenty or more feet in length and was operated after the manner of a plunging churn dasher instead of being struck on the end by a hammer. After the drill was brought to the hole, the bit end was inserted therein and, with the assistance of the respondent, the drill was churned until the obstruction was removed. Shortly thereafter Anderson called for the churn drill, which was brought to him by the respondent. This he took and lowered into the drill hole, when an explosion immediately followed, causing the injury for which the respondent sues.

The witnesses do not agree as to the purpose for which Anderson required the churn drill. One of the allegations of negligence in the complaint was that the master had failed to furnish suitable appliances for tamping the dynamite while loading; namely, a wooden rod. The respondent, while testifying in his own behalf, says that the wooden rod that had been furnished broke during the process of loading, and it was then that Anderson called for the churn drill, leaving the inference, although he does not directly so testify, that Anderson procured the drill to use in place of the broken rod. His witness Stensen, however, says that the hole

at which Anderson was working choked shortly after they had cleaned the other one, and that Anderson called for the churn drill to remove the obstruction. The witness in fact quotes a conversation between Anderson and Johnson, in which Anderson stated to Johnson that the hole at which he was working was so clogged that he would have to use the churn drill, and that Johnson answered by telling him to take it and use it if he thought it necessary. Stensen's statement is corroborated by Johnson, although he gives the conversation between himself and Anderson somewhat more at length than does Stensen, saying that, when Anderson told him of the obstruction, and that it would be necessary to use the churn drill to remove it, he cautioned him to be careful and swab and wash the dynamite away from the obstructions before he attempted to do so.

The witnesses disagree upon another matter also. Both the respondent and Stensen testify that it was dynamite itself that clogged the drill holes, and that it was removed by churning upon it directly with the churn drill. Matt Johnson gave an entirely different version of the transaction. He testified that shots fired to spring the bottom of a hole frequently cause the walls forming its sides to shatter, especially in seamy or shale rock; that in loading the hole, which is done by pushing the dynamite down into the hole with a wooden rod, pieces of rock would fall or be pushed from the side of the wall into the hole, and when these are large enough to lodge before reaching the bottom, will block the hole so tight that they cannot be removed by the wooden rod, but must be cut out with the churn drill; that it was on such an obstruction he used the drill upon the hole that he was loading, and that it was this character of obstruction that was in the hole at which Anderson and the respondent were at work, and not dynamite as stated by the plaintiff's witnesses. He testified, moreover, that it would be extremely dangerous to use a churn drill to remove a clog in the hole caused by the accumulation of dynamite itself, as it would be almost certain to

cause an explosion. Johnson is supported in his statement by an admission made by the plaintiff's witness Stensen. While Stensen did, as we have stated, testify on his examination in chief that the churn drill was used to remove a clog caused by the accumulation of dynamite, in his cross-examination he admits that he had stated to the appellant's representative, prior to the trial, that any one that would use a drill for such a purpose "would be a crazy man." .The superintendent testified, moreover, and in this he is not contradicted, that he had expressly cautioned the men loading the holes not to tamp the dynamite with the steel drill.

The obstruction at which the explosion occurred was about six feet down from the top of the hole. .The explosion was of sufficient force to seriously injure both Anderson and the respondent, although Stensen and Johnson, who were only fifteen or twenty feet away, escaped injury. Loading had been going on at that time for some two hours, and Johnson estimates that some seventy-five pounds of dynamite had been put into the spring or pocket at the bottom of the hole. This did not explode by the blast, but was exploded by Johnson some time later.

The respondent, in his complaint, charges the appellant with two principal acts of negligence, the first of which is that the appellant negligently failed to furnish him with a suitable appliance with which to load the powder; namely, a wooden rod, and in directing the use of a steel drill for that purpose. But it seems to us that there is absolutely no evidence to establish these allegations. A wooden rod was furnished by the master for the purpose of loading, according to the respondent's own statement, and so far from proving that they were directed to use the steel drill in loading the holes, the only positive evidence in the record is directly to the contrary. True, the respondent testifies that the rod furnished by the master broke before the work was finished and that the drill was used to complete the work. But if this

be true it does not convict the master of negligence.  When the appliance furnished by the master gave way, it was the servant's duty to call upon the master for another suitable appliance, and cease work until it was furnished.  He could not substitute one that he deemed appropriate, and then hold the master liable for his mistake of judgment.  There being, therefore, an utter absence of evidence showing, or tending to show, that the master had failed to furnish suitable appliances for the work, the court should not have submitted the question to the jury.  *Tergeson v. Robinson Mfg. Co.*, 48 Wash. 294, 93 Pac. 428.

The other allegation of negligence is that the "defendant negligently and carelessly directed the foreman in charge of the loading of the dynamite to tamp the same with a steel rod," thereby causing the same to explode, whereby the respondent was injured, etc.  The respondent does not contend that the appellant himself actually directed the use of the churn drill in the hole at which he was injured, nor does he contend that the general superintendent so directed it, but contends that Anderson was the foreman in charge of the loading at this particular hole and that his acts are consequently the acts of the master.  But we can find no evidence in the record that supports this contention.  The respondent does say that Anderson was a foreman, and he calls him such throughout his testimony, but he testifies to no fact that supports this assumption.  He admits that Anderson came onto the particular work for the first time on the morning of the accident.  That he gave no command or made no request that might not have been properly given or made by one fellow servant of another.  He admits that Matt Johnson had been his foreman prior to that morning, and that it was Johnson who directed the digging of the holes and fixed the time for their loading.  Moreover, it is testified by every one in a position to know that Anderson was called in to assist in loading the holes because of his experience.  This, instead of making him a foreman, would

make him a fellow servant of the others engaged in the same work. Indeed, it would seem that Anderson, in case he should sue for his injuries, could with the same propriety that the respondent now asserts that he (Anderson) was a foreman in charge of the work, assert that the respondent was such foreman. We think, therefore, that Anderson was a fellow servant of the respondent, and that if his act of using the churn drill in the process of loading was negligence, it was negligence for which the appellant is not liable to the respondent.

The case of *Ongaro v. Twohy*, 49 Wash. 93, 94 Pac. 916, is not in point here. In that case the injured plaintiff was not a fellow workman of the persons doing the blasting. He was engaged in another capacity at another place where he could not observe what was going on, or protect himself in any way. It was not so with the respondent in this instance. Here he not only knew what was going on, but was engaged in the very work that caused his injury. The respondent's case falls rather within the principle of the case of *Jock v. Columbia & Puget Sound R. Co.*, 53 Wash. 437, 102 Pac. 405, than on the case of *Ongaro v. Twohy*.

But the respondent argues that Matt Johnson admittedly was foreman of this work, and that he bound the master to answer for the injuries the respondent received when he consented to the use of the drill when request was made for it by Anderson. But this fact alone would not bind the appellant to answer for the injury. Conceding that his consent would under any circumstances bind his principal, it could only be so where his consent was given with full knowledge of the circumstances under which the drill was to be used. No such fact appears here. Anderson was told not to use the drill on the obstruction until he had washed and swabbed the dynamite away from it. If Anderson failed in this respect, it was still his mistake of judgment and not that of Johnson.

We conclude, therefore, that there is no substantial evidence on which the judgment appealed from can be sustained,

and the order will be that the judgment be reversed, and the cause remanded with instructions to dismiss the action.

Rudkin, C. J., Chadwick, and Gose, JJ., concur.