[No. 9832.  Department Two.  December 8, 1911.]

ANTON FRENGEN, *Respondent,* v. STONE & WEBSTER ENGINEERING CORPORATION, *Appellant.*[1]

MASTER AND SERVANT—FELLOW SERVANTS — WARNING — SIGNALS. Where plaintiff and a fellow workman were working together at the top story of a building in handling timbers from a hoisting derrick, by means of a cable and pulley, and they did not depend upon the foreman to give warning of a signal to the engineer to hoist, but, on the contrary, the foreman depended upon them to give the signal, the two are fellow servants, and plaintiff cannot recover, where his fellow workmen, on being asked if they were ready for the hoist, replied "all ready; go ahead," whereupon the foreman signaled the engineer to start the hoist without warning the plaintiff, thereby causing his hand to be drawn into the pulley; and it is

[1]Reported in 119 Pac. 193.

immaterial that plaintiff had the lesser experience of the two and usually relied upon his fellow worker to give the signal (Dun-bar, C. J., dissenting).

Appeal from a judgment of the superior court for King county, Ronald, J., entered April 13, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in the construction of a building. Reversed.

*Farrell, Kane & Stratton*, for appellant.

*Vince H. Faben* and *Henry Gulliksen*, for respondent.

Morris, J.—Respondent was a common laborer in the employ of appellant in the construction of a six-story building at Seattle. On March 5, 1910, he was injured by having the fingers of his right hand caught in a pulley, which was part of an apparatus for hoisting large timbers to the upper floors. There was no permanent injury, except the loss of the first joint of the second finger.

Respondent had been engaged in this work about two weeks, and on the day of the injury, he and a fellow workman named Boyle were up on the roof to which the timbers were on that day being hoisted. The method employed was to fasten a sling around the timber, to which was attached a hook at the end of a cable. The cable was operated by a derrick, the movements of which were controlled by an electric motor. The cable was connected with pulleys to control its rise and fall. After being placed in the sling and the hook and cable attached, ropes were placed around each end of the timber with a man at each rope to control its swing. It would then be hoisted to the roof, where it would be taken care of by respondent and Boyle, and placed where desired. When the timber reached the roof where it could be handled by appellant and Boyle, and any direction was to be given as to the further movement of the derrick, the foreman, who was on the floor below, would depend upon the men above to

give him a signal, which was generally if not always given by Boyle. The foreman would then signal the man in charge of the motor, and the derrick and cable would be moved accordingly.

At the time of the injury, a large timber, weighing about fourteen hundred pounds, and intended for the top of the elevator shaft, had been hoisted up to the roof. Some lumber piled on the roof along the edge of the hoistway interfered with landing the timber on the roof, and the hoist was stopped and the lumber removed. At this point comes the only discrepancy in the testimony. Respondent and one of his witnesses testify that respondent was then directed by the foreman to grab the cable and pull in the timber. At that time, there were only from six to ten inches of the cable between the end of the derrick and the pulley which respondent caught hold of, and while he had such a hold the foreman, suddenly and without warning, directed the starting of the motor, moving the cable and drawing respondent's fingers into the pulley. The foreman and Boyle, who was working alongside of respondent, deny any such order was given to respondent. They testify that, without direction from any one, he grabbed hold of the cable just as the foreman gave the signal to the motorman. The verdict would establish the theory of respondent as the fact in the case. It is, however, undisputed in the testimony that, before the foreman directed the starting of the motor, he inquired of the men on the roof if everything was all right, to which Boyle responded, "All ready; go ahead." Assuming, then, that, as testified to by respondent, the foreman gave him no warning that he intended to start the motor, is he entitled to recover?

Appellant contends that respondent was guilty of contributory negligence in grabbing hold of the cable in such a dangerous place, as he knew that it was the purpose to immediately move it, and that having only from six to ten inches free space, there could only be one result upon its starting—to draw the hand into the pulley. Without dis-

cussing that feature of the case, it appears to us that the decision of the case must hinge on the relation between respondent and Boyle, since, whether or not the foreman gave any warning to respondent, it is unquestioned that Boyle, standing alongside of respondent, initiated the movement of the cable by telling the foreman they were, "All ready; go ahead." If Boyle, in giving such a direction to the foreman, was a vice principal, respondent can recover. If he was a fellow servant, he cannot.

Respondent contends, citing *O'Brien v. Page Lumber Co.,* 39 Wash. 537, 82 Pac. 114, and *Dossett v. St. Paul & Tacoma Lumber Co.,* 40 Wash. 276, 82 Pac. 273, that where a servant is in a known dangerous place, it is the duty of the master to warn him before directing any movement of machinery that adds to the danger of the place, and that any one to whom the master intrusts the duty of giving such a warning is a vice principal for whose negligence the master must answer. That rule will readily be admitted. But we cannot conceive of its application here. That is the rule where the safety of the place where the servant is at work is under the control of the master, and where the servant depends upon signals being conveyed to him by others for his protection, as in *Westerlund v. Rothschild,* 53 Wash. 626, 102 Pac. 765; *Anderson v. Globe Nav. Co.,* 57 Wash. 502, 107 Pac. 376; *Norman v. Shipowners Stevedore Co.,* 59 Wash. 244, 109 Pac. 1012, and *Jacobsen v. Rothschild,* 62 Wash. 127, 113 Pac. 261. There could be no broader statement of the rule than that given in the *Westerlund* case.

"It was the duty of appellants to furnish respondent with a reasonably safe place in which to work, and to keep that place reasonably safe during the progress of the work. This duty was not confined alone to the place where respondent performed his work, but was extended to all the instrumentalities, machinery, and appliances which from the nature of the work directly affected the safety of the place. Such, then, being the duty of the appellants, failure to properly control the movement of the cable, by giving wrong signals

or acting without signals, while respondent was in a position of danger, was negligence, irrespective of the men or means employed for that purpose. Being a duty imposed by law upon the appellants, such duty could not be delegated to others, whether coemployees of respondent or not, so as to relieve appellants from liability for their failure to properly perform this duty."

We have also held, in a long line of decisions, commencing with *Sroufe v. Moran Bros. Co.*, 28 Wash. 381, 68 Pac. 896, 92 Am. St. 847, 58 L. R. A. 313, that fellow workmen may be fellow servants with regard to some particular part of the employment, and that as to other parts of the employment the fellow workman may stand in the relation of vice principal to the others, depending entirely upon what is being done at the time. If a master takes a common laborer, and for the time being places him in a position where he contributes to the safety of the place where his fellow workmen are engaged, by giving signals which affect the safety of that place and are relied upon by the workmen for their protection, being engaged in a nondelegable duty of the master, he is in the performance of that duty; and in the giving of that signal representing the master, and becomes a vice principal. But in all the cases where this rule is announced, the injured servant has no connection with the signal. He neither initiates it nor communicates it. He simply acts in response to it, depending altogether upon others for the time and manner of the signal, as his protection.

Under the uncontradicted testimony in this case, respondent did not depend upon the foreman to signal him when the motor was to be started. The foreman, on the other hand, depended upon respondent and his fellow workman Boyle, to tell him when he should direct the movement of the motor and derrick. The signal was not one coming to them upon which they should act. It was one proceeding from them upon which the foreman would act. If the foreman in this case directed the starting of the motor when respondent was in a position of danger, it was only after receiving a com-

munication from Boyle—working alongside of respondent, engaged in the same endeavor to pull in the timber—that everything was all right and to go ahead.  Boyle and respondent were engaged in the same work at the same time. Neither one had any supervision over the other.  They acted in common, each had ample opportunity to observe the other. Respondent knew that the foreman would not start the motor after it had stopped, to permit them to obviate the difficulty of its landing, until Boyle had informed him it was proper to do so.  They answer every test of fellow servants.  It is true that Boyle generally gave the signal, and that the foreman depended upon him to do so because of his greater experience.  There was no necessity of respondent and Boyle jointly giving the signal.  The respondent knew that the foreman would act on Boyle's signal, and we cannot see why, knowing this, and knowing he was in a position of danger, he did not inform Boyle, when the foreman called, that he was not ready to have the cable moved.  It seems to us it was his duty to do so, having for two weeks been engaged in the same work, and knowing during all that time that the foreman would act under Boyle's direction, and having had every opportunity to observe his method of communicating the signal to the foreman.  We might add, what more could the master do than he has done here?  He refused to act upon his own assumption that respondent and Boyle were ready, but required them to determine for themselves when they were ready.  Their protection in this regard is placed in their own hands.

We said in *Ponelli v. Seattle Steel Co.*, 64 Wash. 269, 116 Pac. 864, where men were engaged assisting one another in a common task, that the mere fact that one took the lead in directing the work because of age, experience, or common consent, would not change the relation of fellow servants, and make the one so directing a vice principal.  So that the fact that Boyle, because of his greater experience, was relied upon by respondent and the foreman to initiate

the movement of the cable, by directing the foreman when they were ready, does not make him a vice principal. Boyle's act was more the act of respondent, and represented their common situation upon which the master acted, than it was the act of the master communicating a situation to them upon which they acted.

If, in the following relations, the rule of fellow servants has been sustained: two workmen unloading a car, one under the direction of the foreman tells the other what to do; a foreman and his helper erecting a post; a teamster and his assistant loading iron plates on a truck; two brick masons laying a wall; a foreman and a workman erecting a derrick; two motormen on an electric railway, who arrange their own meeting and passing places; two painters painting an engine, where one tells the other a known danger, which for the time stopped the work, has been removed, and relying upon this fact the injured painter returns to work; two brakemen, one on a car and the other operating a switch over which it was intended the car should pass—as we have held in, *Jock v. Columbia & Puget Sound R. Co.*, 53 Wash. 437, 102 Pac. 405; *Desjardins v. St. Paul & Tacoma Lumber Co.*, 54 Wash. 278, 102 Pac. 1034; *Mercer v. Lloyd Transfer Co.*, 59 Wash. 560, 110 Pac. 389; *Cavelin v. Stone & Webster Engineering Corp.*, 61 Wash. 375, 112 Pac. 349; *Swanson v. Gordon*, 64 Wash. 27, 116 Pac. 470; *Grim v. Olympia Light & Power Co.*, 42 Wash. 119, 84 Pac. 635; *Berg v. Seattle, Renton etc. R. Co.*, 44 Wash. 14, 87 Pac. 34, 120 Am. St. 968; *Millett v. Puget Sound Iron & Steel Works*, 37 Wash. 438, 79 Pac. 980; *Stevick v. Northern Pac. R. Co.*, 39 Wash. 501, 81 Pac. 999; we cannot see why, upon the application of the same principles, two workmen, engaged in unloading timbers from a hoisting derrick onto a roof, where by common consent of themselves and the master one undertakes to tell the master when the derrick should be moved, are not fellow servants.

The fellow servant rule is not a popular one with this

court, and we have heretofore refused to make it the basis for defeating recovery for an injured workman except in those cases where it was so plainly applicable that, to the majority of the court, there seemed no escape unless the doctrine was to be entirely abrogated and written out of the law of this state. If it is, it must be done by the legislature and not by the courts. We are, therefore, constrained to hold that Boyle and respondent are fellow servants, and for that reason respondent cannot recover.

The judgment is reversed.

CHADWICK and CROW, JJ., concur.

ELLIS, J. (concurring in part)—I concur in the result only on the ground of contributory negligence. The respondent, when he took hold of the few inches of cable between the pulley and the sling, must have known that any movement of the machinery would crush his hand.

DUNBAR, C. J. (dissenting)—I dissent. I have no fault to find with the law as announced by the majority, but in my judgment it has not been applied to the facts in this case. The opinion says, in the course of the statement, that the signal was generally if not always given by Boyle. The statement, to be literally correct, should be a little more definite on this crucial question. The testimony on this point was furnished by the defendant. The acknowledged foreman and signalman, Mr. Bartell, testified as follows:

"Q. Boyle was a common laborer, was he? A. Boyle was a carpenter. Q. Working with those other men there? A. Yes, sir. Q. They worked all under your direction? A. Yes, sir. Q. Boyle did not hold any higher position than Mr. Frengen, did? A. Boyle was a man that I always depended upon to give me the signal— Q. From above? A. —as he had had experience in that business."

This testimony was not disputed nor modified, and is one of the admitted facts in the case. Hence, it appears that Boyle always gave the signal and that the respondent had

nothing to do with it. The case stands then, without any controversy as to the fact that there were two signalmen. The signal could not be given to the engineer from the roof where the respondent was at work, and it was necessary for some one there to make a signal to the foreman below, and he would communicate it to the engineer, and that "some one," who was authorized to make the signal from above, and who did make it, was Boyle. Hence Boyle became a signalman. It matters not if he did have other duties to perform in conjunction with the respondent. This would probably be simply an economic arrangement, and this particular duty of making the signal devolved upon him with as much force as if he had had nothing to do but to make signals. Then, if the doctrine is true, which this court has uniformly announced in numberless decisions, and which is supported by almost universal authority, and which is in fact quoted approvingly by the majority from the case of *Westerlund v. Rothschild*, 53 Wash. 626, 102 Pac. 765, that a duty to signal, where a signal is necessary to protect a workman in his right to a safe place to work, is a duty imposed by law upon the master which cannot be delegated to others, whether employees of the master or not, so as to relieve the master from liability for their failure to properly perform their duty, how can the deduction be made that respondent and Boyle are fellow servants in a sense that would transfer responsibility for Boyle's delinquencies from the master to the servant?

It has been just as uniformly held, and is candidly acknowledged by the majority, that fellow workmen may be fellow servants with regard to some particular part of the employment, and that as to other parts of the employment the fellow workman may stand in the relation of vice principal to others, depending entirely upon what is being done at the time. This doctrine exactly meets the case in point. If, in handling these timbers, Boyle had negligently or awkwardly caused one of them to drop or slip or swing around

and hurt the respondent, or had injured him in any way while in the performance of his duty as a colaborer, the negligence would doubtless have been the act of a fellow servant for which the master would not be responsible. But where it is conceded, as it must be here, that the negligence of Boyle was in no way connected with the joint duties of him and the respondent, but was an independent duty with sole reference to maintaining a safe place to work, to hold that he was a fellow servant of the respondent conflicts with every cardinal principle that has been announced by this court on the subject of fellow servant; and the cases cited to sustain the rule announced show, in my judgment, an utter misconception of the principles involved in the respective cases and announced by the decisions.

The first case cited and quoted from, viz., *Jock v. Columbia & Puget Sound R. Co.*, 53 Wash. 437, 102 Pac. 405, was where a common laborer was directing and assisting the plaintiff in unloading a car of lumber. The master had told the plaintiff to go with the man that he designated, and he would instruct him how to unload the car. In unloading the car, while both men were engaged in the labor of unloading it, a post or support broke and the plaintiff was injured, and it was held, as stated in the opinion, that in that particular case they were fellow servants. But it will be noticed that in that case they were both working in a common employment, and that the cause of the accident was simply an incident of the work. It was absolutely a joint occupation; the fellow workman had no particular power delegated to him, and one man had the same opportunity to notice and avoid danger as the other. In announcing that opinion, a quotation was made from *Hammarberg v. St. Paul & Tacoma Lumber Co.*, 19 Wash. 537, 53 Pac. 727, where it was said, in reviewing this question:

"The doctrine was applied simply and humanely on the theory that, standing on a level with each other, both as to employment and authority, they had notice which the master

necessarily could not have of the dangers liable to result from the action of the workers; . . ."

But in the case at bar, while they were coworkers with relation to certain things, they were not coworkers with relation to the duty of signaling, because that was a duty that was conferred especially upon Boyle; and it was not an incident to the work which Boyle and the respondent here were doing together, viz., handling these timbers, but it was a vital and special duty of Boyle over which the respondent had no authority or control whatever, and he had a right to rely upon the presumption that the master had furnished an agent to make these signals who would make them properly and in the interest of his safety. The cases seem to have nothing in common.

The next case cited and quoted from is *Mercer v. Lloyd Transfer Co.*, 59 Wash. 560, 110 Pac. 389, where it was held that a teamster and his assistant were fellow servants when they were engaged in the common occupation of loading heavy iron plates on a truck, both being experienced men and having conferred together as to the proper manner of loading them; the court saying in that opinion:

"It appears that Peters, the driver, and respondent, as appellant's employees, were jointly engaged in the task of loading plates; that they were each in such a situation as to afford them a controlling influence the one over the other, and that the only negligence, if any, was their joint act in improperly loading the plates."

It was certainly not the joint act of Boyle and the respondent in not giving this signal, or in giving it without warning to the workmen; because, as we have seen, the respondent was not authorized to give the signal and had no duty whatever concerning it.

The next case, *Desjardins v. St. Paul & Tacoma Lumber Co.*, 54 Wash. 278, 102 Pac. 1034, was where a millwright, acting as foreman, was assisting in the erection of a post which he was holding in place with his hands, and negligently

let go, whereupon it fell and injured his helper. It was held that, as to such act in holding the post, he was a fellow servant, because that was a mere detail of the work for which the master was not responsible. There is no suggestion in this case of any act on the part of the foreman outside of the work he was doing as a joint worker with the plaintiff. And without further special review of the cases, they are all of the same character.

It is true that, if the real master, the owner of a business or occupation or factory, is working with a laborer in the capacity of a common laborer, in the performance of that labor he is a fellow servant, and if he negligently acts he is not responsible as master. The corollary of that proposition is that, if one who is ordinarily a fellow servant with another, in the performance of a duty conferred upon him by the master which is not a joint work with the other laborer, negligently causes an injury to the laborer, the master *is* responsible; for, as before stated, it depends not upon the official character of the men who commit the negligent act, but upon the particular kind of work that they are doing when such negligence is committed. Boyle, then, being a signalman, and it being the duty of the master to furnish a signalman at the place where the signal was given—and that is not disputed—when he failed to give a proper signal or signaled without notifying the workmen, was acting exclusively for the master in the carrying out of the master's duty, and the master is responsible for his negligent acts.

The question of negligence on the part of the respondent in taking hold of the cable where he did, as suggested in the concurring opinion of Judge Ellis, is a question entirely of fact. There was no contention and no showing anywhere in the testimony that the taking hold of the cable and pulling it as the defendant testified that he did, although there was only about an eight inch space for him to catch hold of, was dangerous when the machinery was not moving; and the case was contested by the defendant simply on the ground that

it did not instruct the respondent to take hold. of the cable as he did. The testimony of the respondent on that question was as follows:

"A. (Continuing) —and then the timber was hanging, you know, you could not—we could not land it on any ways, and so the foreman told me to go and grab hold on that cable and pull it in so that we could land it down. Q. He told you that? A. He told me that. Q. Was there any other place to hold it or grab it? A. No other place to get hold of it. Q. And he told you to take it there? A. The foreman told me to take—grab hold of the cable and pull it in. Q. Grab hold of the cable and pull it in? A. Yes, and so I did. I went and grabbed hold of the cable like this (illustrating) and I was going to pull on it and at the time I was going to pull then the block came up and caught my fingers right here (indicating). . . . Q. How did that happen? What caused that? What caused that to do that? Why was it? Was there any signal to start up? A. There was no signal. I could not hear—was no signal given me to get out of there before it was—before the motor started."

Again, he testified that he had not been furnished with any peavy, and that the foreman told him to grab hold of the cable and pull it in. He was very positive on this point, both in his direct and cross-examination. George Conrad, a witness for the plaintiff, testified as follows:

"Q. You didn't hear the foreman tell him to grab hold of the cable and pull that in, did you? A. I did. Q. You heard that too? A. I heard that. . . . Q. And the foreman told this man to grab hold of that cable with his hand and pull it in, did he? A. He said, 'Grab hold of the cable and pull it in.'"

And he testified that he was in plain view of it all, and heard it all. Two witnesses for the defense testified, one of them being near by and the other some distance off, that they did not hear the foreman tell the respondent to take hold of the cable. But the foreman Bartell testified positively as follows:

"Q. And state to the jury and court whether or not you ever instructed him, or whether you instructed him on this

occasion, to catch hold of that cable and pull the timber in. A. No, sir. I certainly never told anybody to grab hold of that cable and pull it in."

So that it will be seen that, on this question, the testimony was absolutely conflicting. In such cases, deduction is for the jury.

These being the only two controlling questions in the case, the first, the question of fellow servant, being determined in favor of the respondent, both by the admitted testimony and the uniform law on the subject; and the second, the question of contributory negligence, having been decided in respondent's favor by a verdict of the jury, the judgment should be affirmed.