NORTHPORT SMELTING & REFINING CO. v. TWITCHELL.

(Circuit Court of Appeals, Ninth Circuit. October 22, 1907.)

No. 1,357.

MASTER AND SERVANT—INJURY TO SERVANT—UNSAFE PLACE TO WORK.

Plaintiff, a boy 16 years old, was employed by defendant at its smelter, and was set to work at night to assist a man in the clean-up yard. This yard was paved with brick, and upon this floor was deposited cones of slag and other refuse which it was the duty of plaintiff and his fellow workman to load on cars and remove, it being necessary to break up the cones for that purpose. On the second night of such work plaintiff was breaking a cone with a sledge, when an explosion occurred by which he was seriously injured. It was shown that when cones contained molten metal, and there was any water or moisture in their vicinity, it was highly dangerous to break them while hot, as if the metal came in contact with water it would cause an explosion; also, that the floor of the yard had depressions where water might stand and that employés, with defendant's knowledge, sometimes emptied water in the yard. Plaintiff was given no instructions nor warning of danger, and, while he

knew the effect if the hot metal came in contact with water, he did not know that there was any water in the yard, and could not see by reason of the darkness, nor did he know that the cone which he was breaking was hot. *Held*, that the questions of defendant's negligence and of contributory negligence were properly submitted to the jury, and that a verdict for plaintiff would not be disturbed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1000, 1001, 1089–1132.]

In Error to the Circuit Court of the United States for the Eastern Division of the Eastern District of Washington.

W. E. Cullen, F. M. Dudley, C. S. Voorhees, and Reese H. Voorhees, for plaintiff in error.

Gallagher & Thayer, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. We have given to the record in this case and to the elaborate briefs of counsel careful consideration, and have reached the conclusion that there is no merit in the appeal. The action is one for damages for serious personal injuries sustained by the defendant in error while at work in the clean-up yard of plaintiff in error's smelter at Northport, Wash.

Among the acts of negligence charged in the complaint against the defendant to the action, and in support of which evidence was given upon the trial, were the following: That the brick floor provided by the defendant as a place for depositing slag from the pots and furnaces used in the operation of its smelter was at all times kept by the defendant in a dangerous and unsafe condition, in that it contained depressions caused by the bricks being worn by long use, in which depressions water frequently collected, so that, when the cones or slag were deposited upon the floor in the course of the defendant's operations, they would frequently rest over a pool of water in such a manner as to cover and conceal the water, and so that, when the cones were broken with the mallet provided by the defendant, the molten metal, if any there happened to be in the cone, would be precipitated into the water, and would explode with terrific and destructive force; that the defendant negligently adopted and pursued a dangerous and unsafe system in conducting its smelting operations, in that it permitted the dangerous slag and cones to be commingled with the harmless ones, with nothing to distinguish one from the other; that cones which are unsafe by reason of containing molten metal become harmless if permitted to cool until the molten metal solidifies; that the defendant negligently permitted and directed the placing of slag and cones on the floor at the times when the persons whose duty it was to remove them in cars were absent, and failed to adopt any rule or system or means by which the danger of injury to its employés from mixing dangerous with harmless slag and cones could be avoided, or the danger be discovered by such employés who should have occasion to go to the place where they were deposited for the purpose of removing them; that the defendant also negligently failed to furnish a sufficient amount of light to enable its employés to see and observe the

dangerous condition of the premises where the slag was deposited; that, if the defendant had adopted some reasonable rule, method, or system by which its employés could know which cones or slag were dangerous and which were not, or how long the slag and cones had been lying upon the floor, or by which the recently deposited cones and slag could be distinguished from those which had been lying there long enough to have cooled until they were safe, the danger to its employés would have been avoided, and the plaintiff in the case would not have received the injuries for which he sued. In addition to a denial of its alleged negligence, the defendant in its answer set up, among other things, contributory negligence on the part of the plaintiff, specifying such contributory negligence, in part, as follows:

"(a) That, if the plaintiff undertook to break up the cone mentioned in the amended complaint herein while the same was in the heated state described in said complaint, he did so in direct violation of his instructions received by him in connection with such work, which directed him to break up only such cones as were cooled off.

"(b) That plaintiff failed and neglected to make use of his physical senses in determining whether or not the said cone which it is alleged in said complaint he undertook to break while in a heated, molten state was so cooled as to permit it to be broken within the scope of the instructions received by him in connection with the said work as aforesaid."

The evidence shows that the defendant in error, then a boy 16 years old, applied to one of the shift bosses of the plaintiff in error for work, who put him to work the first night wheeling sand, and the second night told him to help a man named Palamaruck to clean up the yard, which he did. The yard was paved with brick, and upon this floor was deposited from time to time cones, slag, and other refuse, some of which cones contained some molten metal. The shift boss testified that, when he employed defendant in error, he told him to be careful and not get hurt, but it is not pretended that the boy was given any explanation of the dangers attending such work. In his testimony the latter denied that he was told anything whatever, except to help Palamaruck. The defendant in error worked at the job of cleaning up the yard the night of July 1st, and commenced to work the next night at 6 o'clock. Between 10 and 11 o'clock of the latter night, having temporarily finished the work in the yard, he and Palamaruck went to another part of the smelter to break sows, returning to the yard about half past 12. They found there some more refuse, and had almost finished loading one car, by means of which the refuse was removed, when the defendant in error saw a cone lying on the floor of the yard which also required removal. A sledge hammer weighing about 10 or 12 pounds was provided by the plaintiff in error for the breaking of such cones, which hammer was lying there on the floor, and that hammer the defendant in error took and with it struck the cone one blow, and raised it to strike another, when a terrific explosion occurred, resulting in his serious injury.

The evidence is without conflict that, when such cones contain only slag, they may be safely broken even when red hot, but that, when they contain any molten metal and there is any water or moisture in their vicinity, it is highly dangerous to break them when hot. The defendant in error himself several times testified that he knew this to

be so. What he did not know, however, according to his testimony, was that there was any water on the floor of the yard, or that there were any depressions in the floor in which water could gather. Nothing to that effect was explained to him, nor was he told how long cones containing molten metal had to stand before being cooled enough to break with safety. There was also direct testimony to the effect that molten metal could not explode unless brought in contact with water or moisture, or with some cold damp substance. On the part of the plaintiff, evidence was given tending to show that there were depressions in the floor, and that water was frequently thrown upon the floor of the yard, which latter fact was also testified to by the shift boss of the defendant who employed the plaintiff, from whose testimony in that regard we extract the following:

"Q. I will ask you whether or not there were any rules with respect to the use of water in the clean-up yard?

"A. Well, that place we always observed less or more for the water. I kept the water out of it, yes, sir; and I always gave orders to that effect, too.

"Q. That there should be no water put in there?

"A. Yes, sir.

"Q. Had you ever endeavored to enforce those orders?

"A. Well, I stopped them several times, but they would do it. It seems like sometimes.

"Q. Were any of the men discharged for using water there?

"A. No, sir; not as I know of, but I threatened to, that I would do so.

"Q. Had you seen any water used in that part of the yard at all?

"A. No, sir.

"Q. Had you seen any used in that part of the yard on the previous shift when you were on there?

"A. I did later, when they dumped a settling pot there one time that it exploded a little. There was water there, and they drew out a settling pot, and it set the building a little on fire.

"Q. That was how long before this accident?

"A. I don't know.

"Q. A week or a month?

"A. It might be.

"Q. You cannot fix the time any more definite than that. You mean it may be a week or a month before the accident that you saw this?

"A. I don't understand that.

"Q. I asked you to fix as definitely as you could how long before the accident that you saw water around there at the time the settling pot was dumped in it, whether it was a week or month or how long it was, as near as you can tell.

"A. Well, I did not see any on the night shift, but there might be some put on the day shift. Sometimes in the day we would pull out settling pots. I don't know how long before it was."

It is true that there was no direct testimony that there was at the time of the accident water on the floor of the yard; but there being testimony going to show that the defendant frequently permitted water to be put there and that it was dangerous to do so, and that molten metal could not explode unless it came in contact with water or moisture or some cold damp substance, it was plainly a matter for the jury to say whether the explosion in question was or was not caused by the molten metal contained in the cone that the plaintiff struck coming in contact with the water that the defendant permitted to be put on the floor of the yard. Marande v. Texas Pacific Ry., 184 U. S. 173, 22 Sup. Ct. 340, 46 L. Ed. 487. While the plaintiff did distinctly testify

more than once that he knew that the metal would explode when it came in contact with water or moist . . c or with . . . . . . . sub-stance, he also testified that he did not know that . . . . . . y water on the floor of the yard and that there was nothing to indicate it so far as he could see, that it was somewhat dark in the yard and that the cone did not look red, and that he did not know it was hot, nor that it contained any molten metal. He also testified that he was not given any explanation whatever of any danger attending the work that he was put to do.

The Supreme Court, in the case of Mather v. Rillston, 156 U. S. 391, 398, 15 Sup. Ct. 464, 467, 39 L. Ed. 464, said:

"All occupations producing articles or works of necessity, utility or convenience may undoubtedly be carried on, and competent persons, having knowledge of the business and having sufficient skill therein, may properly be employed upon them; but in such cases where the occupation is attended with danger to life, body, or limb it is incumbent on the promoters thereof and the employers of others thereon to take all reasonable and needed precautions to secure safety to the persons engaged in their prosecution, and for any negligence in this respect, from which injury follows to the persons engaged, the promoters or the employers may be held responsible and mulcted to the extent of the injury inflicted. The explosive nature of the materials used in this case, and the constant danger of their explosion from heat or collision, as already explained, was well known to the employers, and was a continuing admonition to them to take every precaution to guard against explosions. Occupations, however important, which cannot be conducted without necessary danger to life, body, or limb, should not be prosecuted at all without all reasonable precautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition to their pursuit without such safeguards. Indeed, we think it may be laid down as a legal principle that in all occupations which are attended with great and unusual danger there must be used all appliances readily attainable known to science for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence. If an occupation attended with danger can be prosecuted by proper precautions without fatal results, such precautions must be taken by the promoters of the pursuit or employers of laborers thereon. Liability for injuries following a disregard of such precautions will otherwise be incurred and this fact should not be lost sight of. So, too, if persons engaged in dangerous occupations are not informed of the accompanying dangers by the promoters thereof, or by the employers of laborers thereon, and such laborers remain in ignorance of the dangers and suffer in consequence, the employers will also be chargeable for the injuries sustained. Both of these positions should be borne constantly in mind by those who engage laborers or agents in dangerous occupations, and by the laborers themselves as reminders of the duty owing to them. These two conditions of liability of parties employing laborers in hazardous occupations are of the highest importance, and should be in all cases strictly enforced."

And in the recent case of Mountain Copper Company v. Pierce, 136 Fed. 150, 69 C. C. A. 148, where an unexperienced servant was directed by the defendant smelting company to adjust a belt on a pulley shaft without instructing him with reference to a collar and set screws projecting from a shaft by which he was caught and seriously injured while endeavoring to adjust the pulley, we said:

"He [the plaintiff] testified that he knew nothing about the collar or set screws, and that neither the foreman nor Ryan nor any one else told him of their existence, nor the danger attending the operation, or how to perform it. While it is contended on the part of the plaintiff in error that both the collar

and set screws could have been seen by the defendant in error if he had properly looked, it is not contended that he was told of their existence or of the danger attending the operation or how to perform it. True it is that the defendant in error knew that it is dangerous to approach shafting, belting, or other machinery in motion. That fact not only appeared from his own testimony, but is a matter of such common knowledge that every one in his senses must be held to know it. Nevertheless it is the duty of the master, before sending or permitting an inexperienced employé to perform such dangerous work, to instruct him how to perform it, and especially to inform him of any hidden, concealed, or obscure danger. * * * The law in our opinion made it the duty of the plaintiff in error to inform the defendant in error of the collar and set screws, and how to perform the dangerous task, before sending or permitting him, in the course of his employment, to undertake it."

In the present case, the court below correctly left it to the jury to determine both the question of the alleged negligence of the defendant and the alleged contributory negligence on the part of the plaintiff under instructions which fully covered both questions, and which were quite as favorable to the plaintiff in error as they should have been.

The judgment is affirmed.

NOTE.—The following is the opinion of Whitson, District Judge, on overruling the motion for new trial:

WHITSON, District Judge. On the first trial I was of the opinion that the proximate cause of the injury had not been established as alleged, and the case was accordingly taken from the jury. On motion for new trial, I was convinced of my error in that regard upon the authority of Marande v. Texas Pacific Railway Company, 184 U. S. 173, 22 Sup. Ct. 340, 46 L. Ed. 487. While counsel for the defendant still maintain the soundness of their contention made at the first trial, they now rely chiefly in aid of their motion to set aside the verdict of the jury, and to grant a new trial, upon the showing of the plaintiff by his own testimony to sustain the defense of contributory negligence pleaded by the defendant. Their position is this: That which one knows cannot be intensified by communicating it to him. This argument is extremely plausible, but I have reached the conclusion that it is fallacious for two reasons:

First. To charge a boy 16 years old with contributory negligence because he knew the danger, it is necessary that he should have appreciated it in order to establish the defense. Thus it was expressed in Spillene v. Missouri Pacific Railway Company, 111 Mo. 555, 20 S. W. 293, as follows: "A boy may have all the knowledge of an adult respecting the dangers which may attend a particular act, but at the same time he may not have the prudence, thoughtfulness, and discretion to avoid them which are possessed by the ordinarily prudent adult person." This is the well-established rule. Great stress was laid upon the fact that the plaintiff testified that he knew it was dangerous to strike red hot cones. But it was not dangerous. The testimony was not in substantial conflict upon this question. It was shown to be dangerous to strike red hot matte cones in close proximity to water, or with wet steel. It was not dangerous to strike red hot slag cones under either condition. Therefore the testimony of the plaintiff must be taken in connection with the other testimony in the case, and with the qualification which he himself made in other parts of his testimony. To the contention made by counsel that the testimony of plaintiff shows that he fully appreciated the danger I cannot give my assent. True, the plaintiff was not able to stand up at all times against the skillful cross-examination of counsel, but he did repeat two or three times that he knew it was dangerous to strike hot matte cones when there was water there, and he said that he knew that he ought to break up only cold cones. The whole testimony, fairly considered, disclosed this state of affairs: The boy had observed generally certain occurrences around the yard. He had seen cones explode when coming in contact with water, and had seen the effect of cold, damp steel coming in contact with

hot metal. He had been permitted to go to work, however, without any instruction as to the danger attending such explosions. The master had allowed a boy of inexperience to observe for himself from the surroundings and apply his immature judgment in reasoning from cause to effect, without warning him of the danger which it is plain to my mind he did not fully appreciate. While counsel for the defendant have shown much ability in the presentation of their theory and have displayed much ingenuity and skill in cross-examining the plaintiff, I can but feel that the contention they make is technical, and that they have overlooked that phase of the case which requires the master to caution one of tender years not generally of danger, but to put him in possession of such facts as will enable him to appreciate it.

Second. While the rule is that one cannot deliberately enter a place of danger, or do an act which is manifestly dangerous and which in all reasonable probability will result in injury, yet that does not relieve the master from furnishing a safe place. The argument is made that the plaintiff knew that the cone which he struck must have been deposited between 11 and 1 o'clock, but the master is presumed to have known this also. Clearly the plaintiff, was pursuing the work which he had been directed to do. The information that there was only one cone there, and that recently from the furnace, must have been equally in contemplation of law in the mind of the master as in the mind of the plaintiff. The cone did not appear to be hot. It was shown that it had cooled sufficiently to form a crust, so to speak, on the outside from one to two inches in thickness, and, of course, it was black. Plaintiff, then, acted on appearances, and it was a question for the jury to say, considering his age, experience, and the like, whether he was guilty of contributory negligence. Again, it was disclosed by the testimony of Sabin, the shift boss, that it was against the rules to put water at the particular place where those cones were being deposited. He said: "I kept the water out of it, yes, sir; and I always gave orders to that effect, too. Q. That there should be no water put in there? A. Yes, sir." It sufficiently appeared that the defendant had knowingly permitted the violation of this rule in relation to keeping this particular place dry, to such an extent as to establish a disregard of it. The plaintiff was justified in assuming that there would be no water there.

For these reasons, the motion for a new trial will be overruled.