[No. 7839.   Department Two.   July 22, 1909.]

AMIDOS DESJARDINS, *Respondent*, v. ST. PAUL & TACOMA
LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—FELLOW SERVANTS—SUPERIOR — DETAIL OF
WORK.   Where a millwright, acting as foreman, and assisting in the
erection of a post, which he was holding in place with his hands,
negligently let go, whereupon it fell and injured his helper, he is,
as to such act, a fellow servant, where it appears that a mere boy
could have held the post; since that was a mere detail of the work
for which the master was not responsible.

SAME—NEGLIGENCE—PROXIMATE CAUSE.   Where a millwright who
was holding a post in position negligently let go and it fell, causing
injury to a fellow servant, his negligence was the proximate cause
of the injury, and it is immaterial that the post would not have
fallen if a sling had been attached nearer the top of the post.

Appeal from a judgment of the superior court for Pierce
county, Irwin, J., entered October 17, 1908, upon the verdict
of a jury rendered in favor of the plaintiff, in an action for
personal injuries sustained by an employee in a sawmill.   Re-
versed.

*Blattner & Chester* and *L. B. da Ponte*, for appellant.

*Johnston & Swindells*, for respondent.

MOUNT, J.—Action for personal injuries.   Plaintiff re-
covered a judgment in the court below.   The defendant has
appealed.

It is urged by the appellant that the evidence is insufficient
to sustain the judgment.   It appears that the respondent was
injured while working in the appellant's sawmill, on March
7, 1908.   Respondent was a millwright.   He had been em-
ployed about the mill of the appellant for some time.   One
S. B. Wilson was the head millwright, and it was his duty
to keep the mill in repair and in running order, and to direct
new work.   Under Mr. Wilson were several millwrights, among
whom were Joe Brandt and the respondent and some helpers.

[1]Reported in 102 Pac. 1034.

On the morning of March 7, 1908, Mr. Wilson directed Mr. Brandt to take respondent and two helpers and set up a post in the mill. This post was between eight and nine feet long and twelve by fourteen inches square. The post was prepared by Mr. Brandt and respondent. A tenon was framed on one end of the post. This tenon was to be placed in a mortise in a sill above. The bottom of the post was to rest on a sill below. After the post was framed as above stated, respondent and Brandt carried it to the place where it was to be set up. They raised it into a vertical position, but they were not able to insert the tenon into the mortise above. While they were endeavoring to do so, the post fell. It was then suggested by Mr. Brandt that they put a block and tackle on the post. The post was again raised on end. A sling was placed around the post near the bottom. The block and tackle were then fastened into the sling and to the sill above. Respondent and Brandt and the helpers then attempted to pull the post into position with the block and tackle. The tenon entered the mortise about one-eighth of an inch, but the men could not pull it into place. Brandt then suggested that they get a jack and place it under the lower end of the post and force it into position by means of the jack. One of the helpers went for the jack. Respondent got down below the post to scrape away the sawdust and place a block for the jack to rest upon. Brandt attempted to hold the post with his hands. While holding the post, Brandt took hold of the rope of the block and tackle and removed his hands from the post, which thereupon toppled over and fell. Respondent attempted to get out of the way of the post, but it struck him and injured him about the back. The respondent described how he was injured as follows:

"On the 7th of March I got to the mill about twenty minutes to seven. I changed clothing, took my tools and went to the place where I was working the day before, on the next panel to this one. I stayed there until Mr. Brandt came, which was four or five minutes. I said, 'What have you got today?' He said, 'I don't know; we will wait for Mr. Wilson.'

He was the head millwright for both mills. We waited there for a while and finally Mr. Wilson came. Brandt and I stayed over here about twenty-five feet, and Brandt met Mr. Wilson by the post that was to be put up. Mr. Wilson showed Mr. Brandt this and said he wanted the post put up, as he showed him the mortise. The mill was running and I could not hear what was said, but I saw him show the mortise. Mr. Wilson went away and Brandt called me over to him. I went over to him and he said, 'We want to put up a post here.' I said, 'All right.' I said, 'I will go and get an adz and other tools.' I went over for them and I had to grind them, and Mr. Brandt marked the place with a pencil, and he said, 'Put that down about two and a half inches for the post to set in.' I measured with my rule from the outside edge and said, 'It is only ten inches and the post is twelve.' He said that another timber goes alongside of it to give the post a bearing. So I said, 'All right.' He said that Bunker will bring that timber. Mr. Bunker is supposed to represent Wilson when Wilson was not around, or when he was at the other mill. I started at that and Bunker came around and I helped him, and he went back and got this post. He had left it over on the truck. Brandt said, 'Let us put the post on the trestle.' We did that and Brandt went for the tool chest at the millwright room and got a slick and jack. That was about nine or ten o'clock in the morning, and I went to work and framed that sill and dapped that, and also this piece here (indicating) to receive the post. That was two inches, to give the post a bearing. I then waited awhile for Brandt, and in the meantime I ground some tools which were dull and after I got through was standing by the post. Brandt came around about eleven o'clock. He measured up the length of the post and scratched the post. I helped him saw the post. Then he said, 'I will frame the tenon.' I went away for a minute and when I came back there was a ladder up here (indicating) and I took my wrench and hammer and went up the ladder and loosened the board on the header. Brandt was just through framing the tenon and he said, 'Come down here.' I did so, and he and I carried the post over there. He said, 'Put your end down,' which I did, and he raised the post like that (indicating). 'Now,' he said, 'pinch it up,' and I did it with a pinch bar, like that (indicating). It was pretty tight. He looked at it and said, 'We

cannot get it in that way,' and said to loose it up, and I did. Then I pinched it over and the post fell. He stood there and I was here (indicating). Then he said, 'Let us pick it up.' We picked up the post and stood it up like that (indicating) against the header. Brandt then stood here and said, 'Put the tackles on,' and I went up the ladder, and stood up here to put the tackles. Brandt said, 'Give me the hooks down,' which I did, on this side. He went to work and grabbed the header.

"Q. What is the header? A. This is the header here (indicating). Brandt looked it over and told Mr. Hagley to get the sling. I looked down and saw Hagley get the sling and Brandt started to put it down here. When I saw that I started down and he put it in. The post then stood like that on the out edge. Then he told Hagley to pull on the rope. Then Mr. Young came up. I saw the tongs here and so I drove them in to be sure. Mr. Brandt said, 'Pull on the tackle and work the post over a little.' Then he put the tenon in the mortise just like that (indicating). Brandt was here and I was to the left. Hagley and Young held the rope. The timber was like this here (indicating). Brandt said, 'The tenon is too tight,' and said 'Joe, you get the jack and we will push it up.'

"Q. What was under the post? A. Nothing there. Q. Was there anything solid under there? A. Only sawdust. This timber was back here. After I jumped down here, there was a block here, and another under the sill. I looked at this block and Brandt held the post, and I thought he was going to hold it. I did not suppose he would let it go. I could see the outside edge of the tenon in the mortise. Q. How far up in the mortise had the tenon gone? A. About an eighth of an inch. I could see the trimming of the tenon on that side, but the post stood slanting a little. When I jumped down, Mr. Young let go of the rope and went for a jack on the north panel of the mill. There was no floor here on this panel. I looked at the block to see which was the easiest. I stepped down to look at the block and then I just happened to look up and see Brandt had let go the post and had his hand here on the rope close to the tackle, and I saw the post move and I made two jumps, and the second jump was right here on the sill, and when I got on the sill with my foot, the post struck me as it fell; struck me right on the back. Q.

How big a post was it? A. 12 by 14 and it was green timber. Q. How long? A. Between eight and nine feet, I think. It was all I could do to carry my end. It was all we could do to carry the post over there. Q. Now, when the post was in this position, as you have shown, with the tenon in the mortise and Brandt holding it, did it require any great strength to hold it in position? A. No, a ten-year-old boy could hold the post, if he would not let go. Of course the moment you pull on the tackle, that is the way it went (indicating). Q. Did you hear any warning cry at all before you were struck? A. No, I never heard anything, only when the post hit me, I let out a yell."

It was claimed by respondent at the trial, and is also claimed here, that Mr. Brandt was a vice principal, and that he was negligent in not warning respondent that the post was about to fall, and also negligent in placing the sling near the bottom of the post instead of near the top. It is claimed by the appellant that the evidence shows Mr. Brandt was not a foreman and had no more authority over respondent than respondent had over Mr. Brandt; in other words, that Mr. Brandt and respondent were simply fellow servants working together, with no authority the one over the other. We may assume, however, for the purposes of this case that Mr. Brandt was a foreman for the purpose of directing the work, and therefore had control of the respondent. Still, the respondent's evidence makes it plain that the negligence which caused the injury was the negligence of a fellow servant in a mere detail of the work. It is not claimed that proper appliances were not furnished by the master. Respondent states that: "Brandt held the post and I thought he was going to hold it, and I did not suppose he would let it go . . . I just happened to look up and see Brandt had let go of the post and had his hand here on the rope close to the tackle. . . . A ten-year-old boy could hold the post if he would not let go." In holding the post Mr. Brandt was performing a mere detail of the work. He was not performing any nondelegable duty of the master. If he was

negligent in letting go of the post with his hands and at-
tempting to hold it by the tackle, the negligence in that re-
spect was clearly the negligence of a fellow servant for which
the master was not responsible.   This case in this respect
is controlled by the case of *Jock v. Columbia & Puget Sound
R. Co.*, 53 Wash. 437, 102 Pac. 405.

The respondent relies upon the rule stated in *Nelson v.
Willey S. S. & Nav. Co.*, 26 Wash. 548, 67 Pac. 237 ; *O'Brien
v. Page Lumber Co.*, 39 Wash. 537, 82 Pac. 114; *Dossett v.
St. Paul & Tacoma Lumber Co.*, 40 Wash. 276, 82 Pac. 273,
and other cases holding that, where the master directs a dan-
gerous agency into motion without warning, and injury re-
sults to the servant, the master is liable.   That rule cannot
apply to this case because, if Brandt represented the master,
he directed no dangerous agency into action.   He was hold-
ing a post with his hands.   A ten-year-old boy could have
held it.   He took his hands from the post and attempted to
hold it by means of a rope.   The post fell without his volition,
so far as the evidence shows.   If that was negligence, it was
his own negligence and not that of the master.

Respondent also urges that, if the sling to which the
block and tackle were fastened had been placed nearer the
top of the post, the post could not have fallen, and that the
placing the sling near the bottom was a negligent method of
conducting the work.   But this method of placing the sling,
according to respondent's testimony, was not the proximate
cause of the post falling.   Mr. Brandt could have held the
post with his hands, as he did at first.   But he let go of it
with his hands and attempted to hold it by a rope, and the
post fell on that account.   The proximate cause of the post
falling, therefore, was the fact that Mr. Brandt let go of it
with his hands.   Under the facts, as proven by the respond-
ent, the negligence which caused the injury was so clearly
that of a fellow servant that no liability can be attributed
to the master.

The judgment must therefore be reversed, and the cause dismissed.

RUDKIN, C. J., DUNBAR, CROW, and PARKER, JJ., concur.