[No. 9036.   Department One.   December 29, 1910.]

CARL CAVELIN, *Appellant*, v. STONE & WEBSTER
ENGINEERING CORPORATION *et al.*,
*Respondents.*[1]

MASTER AND SERVANT—FELLOW SERVANTS—INCOMPETENCY—EVI-
DENCE—SUFFICIENCY.   Incompetency in a common mason or brick-
layer is not shown by evidence that he was nervous, and in a hurry
about his 'work, and had on one or two occasions broken or pulled
out the line marking the outer edge of the wall.

MASTER AND SERVANTS—FELLOW SERVANTS.   Masons engaged in
laying brick are fellow servants when stretching a line to mark the
outer edge of the wall.

MASTER AND SERVANT—NEGLIGENCE—SAFE APPLIANCES.   A cor-
poration, engaged in the construction of a building, cannot be
assumed to be negligent in furnishing an insufficient nail to hold the
bricklayer's line, where there was no testimony that it had furnished
any nail, and one of the witnesses testified that it was customary
for the masons to select the nails.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered July 15, 1910, upon granting
a nonsuit, dismissing an action for personal injuries sustained
by a employee engaged in laying brick.   Affirmed.

*Heber McHugh* and *John T. Casey (Milo A. Root*, of
counsel), for appellant.

*Farrell, Kane & Stratton* and *Kerr & McCord*, for re-
spondents.

RUDKIN, C. J.—On the 29th day of June, 1909, the plain-
tiff, the defendant Melburg, and a number of fellow workmen
in the employ of the defendant Stone & Webster Engineering
Corporation, were engaged in laying brick in the wall of the
ninth story of the Henry building, in the city of Seattle.
The wall in question was about forty feet in length, and
ten or twelve masons in all were engaged in the work.   A
line was extended along the outer edge of the wall from

[1]Reported in 112 Pac. 349.

one end of the stretch to the other, to which the brick were laid. This line was fastened at one end by a small wire nail inserted in the mortar between the brick, and to a similar nail or spike at the opposite end. Every time a row or tier of brick was laid it became necessary to raise the line for the next tier, and the change was made by the two men at the end of the line. This duty was not assigned to any particular employees, but devolved upon whomsoever happened to be working at the end of the line when it became necessary to make the change. As soon as a tier of brick was completed, a warning or command was given by the man at the "tie-end" of the line, or by some of the other workmen, to raise the line, whereupon the man at the "stick-end" would remove the nail from the wall and reinsert it at the proper place, after which the line was drawn tight and fastened by the man at the opposite end.

Shortly after the noon hour on the above date, a command was given to raise the line, and the plaintiff undertook the performance of that duty. After he had inserted the nail between the brick, the line was drawn tight by the man at the opposite end, and the nail flew out, striking the plaintiff in the eye and causing the injury for which a recovery was sought in this action.

At the close of the plaintiff's testimony the court directed a nonsuit, from which this appeal is prosecuted. Many delinquencies on the part of the master were charged in the complaint, but we will consider such only as are relied on in support of the appeal. These are, first, that Otto Melburg, "the tie-end man," whose act caused the injury complained of, was reckless, incompetent, and habitually careless in the performance of his duty, and that such incompetency was known, or should have been known to the respondent corporation by the exercise of reasonable care and diligence on its part; second, that Melburg was a vice principal; and third, that the small nail furnished by the master was unsafe and insufficient for the purpose for which it was furnished and used. The only

evidence offered tending to show the incompetency of Melburg, or knowledge of such incompetency on the part of the master, was some slight testimony to the effect that "he appeared to be nervous," "in a hurry about his work," and had broken the line and pulled the nail on one or two previous occasions. Such testimony, in our opinion, is utterly insufficient to show incompetency in a common mason or bricklayer. He was not employed to operate or handle dangerous agencies or dangerous machinery, and had only been engaged in this particular work for an hour or two at best before the accident. The duty assigned him was such as falls to the lot of every workman. There was nothing unusual or dangerous about it, and no special skill or experience was requisite to its safe and proper performance. True, there was some testimony tending to show that it required some experience to qualify one to properly perform this simple task, but it is a matter of common knowledge, known to all men, that it requires no peculiar skill or knowledge to qualify one to safely stretch a small line forty feet in length, and so-called expert testimony to the contrary imposes too great a tax on the credulity of either court or jury.

Nor is there any merit in the claim that Melburg was a vice principal. The complaint proceeded upon the theory that he was a fellow servant, negligently employed or retained, and this theory is manifestly correct, so far as his mere relations to the appellant were concerned. *Jock v. Columbia & Puget Sound R. Co.*, 53 Wash. 437, 102 Pac. 405; *Desjardins v. St. Paul & Tacoma Lumber Co.*, 34 Wash. 283, 102 Pac. 1034. If two men thus employed are not fellow servants that doctrine is indeed abrogated in this state. If the act of stretching a line for bricklayers is the act of the master and cannot be delegated, the cost of superintending the construction of a building would exceed the cost of construction itself.

If we concede that the nail in use was insufficient for the purpose, there is no testimony in the record tending to show that it was actually furnished by the master. There was

testimony tending to show that it is customary for the master to furnish such appliances, but none that the master did in fact furnish it. One of the witnesses for the appellant testified that it is customary for the men to get their own nails, and to select such as they 'may choose about the works. In the absence of testimony tending to show whether the nail was furnished by the master or selected by some fellow servant, we cannot indulge in presumptions or assume that the respondent corporation was negligent. Some questions of concurring negligence are discussed in the briefs, but if there was no negligence on the part of the respondent corporation there could be no concurring negligence. There was perhaps sufficient testimony tending to show negligence on the part of Melburg to go to the jury, but there is no assignment of error on that point, and no discussion of that question in the briefs.

The judgment of the court below is therefore affirmed.

MOUNT, GOSE, PARKER, and FULLERTON, JJ., concur.