[No. 9418.  Department Two.  July 24, 1911.]

## P. Ponelli, *Respondent*, v. Seattle Steel Company, *Appellant*.[1]

Master and Servant—Fellow Servants—Vice Principals.  Common laborers in a steel plant instructed to cool out the neck of a furnace and remove slag, are fellow servants, and one of them does not become a vice principal by reason of his greater experience, or of his taking the initiative and directing his fellow workman to "make room," whereby the fellow workman was put in a place of danger.

Master and Servant—Negligence of Master—Details of Work.  Permitting the escape of water in cooling the neck of a furnace is not an act of negligence upon the part of the master, where the men themselves were responsible for the condition.

Master and Servant—Negligence of Master—Duty to Warn—Acts Not Anticipated—Scope of Order.  Where a common laborer, instructed to cool out the neck of a furnace and remove slag, caused an explosion by breaking a block of slag and allowing its molten contents to come into contact with water, he cannot claim that he should have been warned as to the liability of such an explosion, the breaking of the block of slag being no part of his duty and an act that would not be anticipated by the master.

Appeal from a judgment of the superior court for King county, Gay, J., entered May 25, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in a steel plant.  Reversed.

*Kerr & McCord,* for appellant.

*Joseph M. Glasgow,* for respondent.

Morris, J.—Respondent, while in the employ of appellant, was injured, and this appeal is taken from a judgment awarding him damages for such injury.  The determinative facts are these: On the morning of November 15, 1909, respondent, who was a common laborer performing general

[1]Reported in 116 Pac. 864.

work around the steel plant, was instructed by his foreman, in connection with two other employees, Wagner and Gentelee, to cool out the neck of a furnace and remove the slag therefrom. There were a number of furnaces in appellant's plant, from which when in use it was necessary to draw off the slag. This was drawn off while in a molten state, into a cinder buggy, having a receptacle twelve inches wide at the bottom, fifteen inches wide at the top, and twelve inches deep. The slag is allowed to remain in this buggy until it is cool enough to dump, when it is dumped upon the earthen floor of the furnace room, forming a solid block the size of the receptacle and weighing from 150 to 250 pounds, depending upon the amount of iron in it. These blocks of slag remain where they are dumped until, in the judgment of the men whose work it is to remove them, they are cool enough to handle, when they are thrown into a small car and taken away.

In carrying out their instructions, respondent and his two companions went to the furnace to which they were directed, where Wagner poured water into the neck to cool the slag so it could be handled, while Gentelee and respondent took down the brick side so as to enable them to get at the slag when it was sufficiently cooled. Gentelee and respondent took out the brick, throwing them behind them, until they came to the last row, when Gentelee told respondent to make room. Respondent then took the brick and commenced piling them around the bottom of the furnace, when he noticed a block of slag which was located by different witnesses from three to nine feet from the neck of the furnace. In cooling out the neck of the furnace with water, some escaped and ran down upon the ground and under this block of slag. Respondent picked up a crowbar and struck the slag, breaking it, and its molten center coming in contact with the water underneath caused an explosion, injuring respondent. The appellant had two men, Page and Anderson, whose work was to carry away the slag, and they were thus

working at the time.  Page says he knew when the slag could be safely broken, and had been warned of the danger of explosion in permitting the molten slag to come in contact with water, and that when he saw what respondent was about to do, he warned him against it.  Respondent says he heard no warning from Page, and did not know of the danger of an explosion in breaking the block of slag before its center had cooled.  The negligence pleaded was in allowing the water used in cooling the furnace to escape and run over the floor and underneath the slag; and in failing to warn respondent of the danger of explosion from the contact of water and hot slag, and in commanding him to remove the slag.  These facts and contentions of negligence present the legal questions as to the relation between respondent and Gentelee, the duty of respondent, and the necessity for warning.

We cannot conceive upon what theory Gentelee and respondent can be classed as other than fellow servants.  The mere fact that Gentelee took the lead in directing the work would not make him a vice principal.  When several servants are engaged in a common task, some one of them, by reason of age, experience, character, or common consent, generally takes the initiative in directing the detail of the work.  This does not change the relation from fellow servant to vice principal.  It is the duty of the master to provide a reasonably safe place in which his servants may perform their work, and to further provide them with reasonably safe appliances and instrumentalities with which to perform that work.  When that is done, his duty is at an end, and the detail of the work may be left to the servants themselves.  Where the master takes a servant and, for the time being, intrusts to him the duty of contributing to the safety of the place, as in *Sroufe v. Moran Bros.*, 28 Wash. 381, 68 Pac. 896, 92 Am. St. 847, 58 L. R. A. 313, and like cases, the servant, while in the performance of that act, became a vice principal. We have no facts here to bring Gentelee within this rule,

assuming for the sake of argument that it was in following his suggestion to "make room" that respondent was placed in a position of danger. Such a suggestion would not make of him a vice principal, nor distinguish this case in this respect from the rule announced in *Jock v. Columbia & Puget Sound R. Co.*, 53 Wash. 437, 102 Pac. 405.; *Desjardins v. St. Paul & Tacoma Lumber Co.*, 54 Wash. 278, 102 Pac. 1034; *Mercer v. Lloyd Transfer Co.*, 59 Wash. 560, 110 Pac. 389; *Cavelin v. Stone & Webster Engineering Co.*, 61 Wash. 375, 112 Pac. 349, and *Swanson v. Gordon*, ante, p. 27, 116 Pac. 470. To hold that every time one servant suggests a plan for doing the work, or calls upon another servant to do something which in his judgment will facilitate the work, in making the suggestion or in directing the other servant, he becomes a vice principal and fixes a liability upon the master for any injury incurred in following the suggestion, or in accepting the direction where the duty of superintendence had not been intrusted to him by the master, would be to go further than any case with which we are familiar, and announce a new rule with no legal principle for its support.

An additional reason for holding that the direction of Gentelee to "make room" cannot be attributed to the appellant for the purpose of establishing a liability for this injury, is that such a direction did not include, nor was it intended to include, a direction to respondent to break up and remove the block of slag, which was the proximate cause of the injury. Gentelee knew that Page and Anderson were there for that purpose, and had he wanted the slag removed he says he would have called upon those men to remove it. His direction to respondent called only, and was intended to call only, for the removal of the brick taken from the neck, and to pile it up in such a manner that it would no longer be in the way. Neither can we say that permitting the escaping of the water from the neck of the furnace was of itself such an act of negligence as to fasten liability upon ap-

pellant. . The men themselves were responsible for this condition. Neither does the record disclose any way in which it could have been prevented.

The last assertion of negligence is in the failure ·to warn. The doctrine of needful warning or instruction does not apply to this situation. It extends only to those appliances and instrumentalities made use of by the servant in his work, or to such hidden dangers as he is subjected to in his work, and to such as can be reasonably anticipated by the master. *Nordstrom v. Spokane & Inland Empire R. Co.*, 55 Wash. 521, 104 Pac. 809, 25 L. R. A. (N. S.) 364. Had there been any hidden danger in taking down the neck of the furnace, or in cooling it with· water, or in afterwards taking out the slag, which was the work respondent was sent to do, it would have been the duty of the appellant to give warning of such danger, that it might be avoided. Or had the breaking of the blocks of slag been a necessary part of his work, such duty might have been extended to include a warning of its danger. But the breaking of these blocks of slag had nothing to do with cleaning out the furnace. There was no connection between the two acts. Neither could the appellant anticipate that respondent would attempt to break these blocks while engaged in cleaning out the furnace, knowing it had provided competent men with full knowledge of the danger, who were there to do that very thing. Respondent was, therefore, injured in doing an act he was not called upon to do, and which was no part of the work he was sent to perform. The presence of the block of slag near where respondent was working did not make the place unsafe, as there was no danger to respondent from the block itself. It was only his unnecessary and uncalled for act that produced the danger. Had he undertaken that only which he was directed to do, no danger would have befallen him, either from the act itself or the place provided for its performance.

Respondent relies upon a number of cases, including *Northport Smelting & Refining Co. v. Twitchell*, 156 Fed. 643, where injury had occurred because of a lack of knowledge that molten iron or slag will explode when brought in contact with water, rust, ice, or dampness. But in all those cases, as in the *Northport* case, the injury was to the employee who was necessarily handling the hot mass without knowledge of its dangerous tendency, and would be authoritative here had this injury occurred had respondent been sent by appellant to break up or remove this slag without warning of the latent danger. In those cases the master might have anticipated the act which produced the injury, as a necessary part of the directed work. In this case there was no reason for the master to anticipate that respondent would attempt to break up and remove the slag.

We cannot find any act of appellant upon which negligence can be predicated which resulted in the injury complained of; and lamentable as is the condition of respondent, no liability can be fixed upon appellant unless its negligence is shown to be the proximate cause of his injury.

The appellant moved for a directed verdict at the conclusion of the evidence, which was denied. It follows from what we have said, it should have been granted. The judgment is reversed, and the cause remanded with instructions to dismiss.

Chadwick, Crow, Ellis, and Gose, JJ., concur.