[No. 12133.   Department Two.   May 8, 1915.]

ARTHUR BECK, *Appellant*, v. INTERNATIONAL HARVESTER
COMPANY OF AMERICA, *Respondent*.[1]

TRIAL—DIRECTION OF VERDICT — CORRECTION OF ERROR — JUDGMENT
NOTWITHSTANDING VERDICT.   The action of the court in rendering
judgment *non obstante veredicto*, after overruling a motion for non-
suit and a challenge to the sufficiency of the evidence, was proper,
where there was no sufficient evidence on which to base a recovery
introduced at the trial; since, if the court decided erroneously in the
first instance, its powers were ample to correct its error at any time
before the entry of a final judgment.

SAME—TIME FOR MOTION.   Where judgment on a verdict has not
been actually entered, the court would not be precluded from render-
ing judgment *non obstante* from the mere fact that a right existed to
entry of judgment on the return of the verdict.

SAME—TAKING CASE FROM JURY.   Where there is a substantial
conflict in the evidence, the court has no right to determine, as a
question of law, a motion for nonsuit, a challenge to the sufficiency
of the evidence, or a motion for a judgment notwithstanding the
verdict, on the ground that the party holding the affirmative has
failed to prove a cause for the jury.

MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS—
SUFFICIENCY OF EVIDENCE.   An employee injured while unloading
machinery from a car, due to the carelessness of another employee
in not securely fastening pieces remaining after the removal of an
outside piece, cannot recover on the ground that a fellow employee
was selected by the master as its representative and that he allowed
the place to become unsafe, where it appears that the work was not
out of the ordinary and was commonly performed without direct
supervision; that there was no hidden danger and plaintiff had been
engaged in similar work and was not working under the supervision
of his fellow employee, both being employed as common laborers at
the same wages; and the order of the foreman given to unload the
cars was directed to the one as much as to the other.

SAME—VICE PRINCIPAL.   The fact that a fellow servant, in the
progress of work in the same common employment, assumes to give
directions to other fellow servants necessary to secure concert of
action and facilitate the work, does not elevate him into the position
of a vice principal.

[1]Reported in 148 Pac. 35.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered November 3, 1913, in favor of the defendant, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee engaged in unloading machinery from a car. Affirmed.

*A. O. Colburn* and *C. D. Randall,* for appellant.

*Belden & Losey,* for respondent.

FULLERTON, J.—The appellant while an employee of the respondent was injured in the course of his employment, and brought the present action to recover in damages therefor. After issue joined, a trial was entered upon before the court sitting with a jury. The appellant presented his case in chief, whereupon the respondent moved for a nonsuit against him on the ground that he had failed to prove a sufficient cause for the jury. This motion the court overruled. The case then proceeded to the close of the evidence, when the respondent challenged its sufficiency to sustain a judgment in favor of the appellant. This challenge was likewise overruled. The cause was then submitted to the jury, who returned a verdict for the appellant in the sum of $2,000. Within two days thereafter, the respondent moved for a judgment notwithstanding the verdict, and, in the alternative, for a new trial. The court sustained the motion for judgment *non obstante,* entering a judgment to the effect that the appellant take nothing by his action. From the judgment so entered, this appeal is prosecuted.

The appellant first contends that the trial court, after overruling the motion for a nonsuit and the challenge to the sufficiency of the evidence, was not warranted in granting a motion for judgment notwithstanding the verdict. If we have correctly gathered the meaning of his learned counsel, the contention is that these rulings became the law of the case, and the court exceeded its powers in granting a judg-

ment on the ground that no cause of action had been proven, after it had, during the course of the trial, refused to sustain a motion or challenge timely interposed based upon the same ground. But the appellant has mistaken the rule. If it be true that there was no sufficient evidence on which to base a recovery introduced at the trial, and the court erroneously decided otherwise, its powers were ample to correct its error at any time before the entry of a final judgment. This we have held in a number of cases. In *Shepard v. Gove*, 26 Wash. 452, 67 Pac. 256, the defendant demurred to the plaintiff's complaint on the ground that the action had not been commenced within the time limited by law. This demurrer the then presiding judge overruled. Afterwards there was a change in the personnel of the court, and the defendant renewed the objection before the succeeding judge, who sustained the objection. It was contended that the succeeding judge was without power to overrule a decision of his predecessor in office. The court denied the contention, using this language:

"It is insisted by the appellant that Judge Griffin had no right to overrule a decision made by Judge Jacobs in the case. But the succession of judges cannot be considered by this court; the office is a continuing one; the personality of the judge is of no legal importance. The action of Judge Griffin was in legal effect a correction of his own action, which he deemed to have been erroneous; and it were far better that he should correct it, than to perpetuate an error which would have to be corrected by this court."

In *State ex rel. Brown v. Board of Dental Examiners*, 38 Wash. 325, 80 Pac. 544, Judge Hatch, presiding in the superior court, made an order requiring the board of dental examiners to produce certain papers in their possession, and the cause was continued for that purpose. When the case was again called, Judge Rudkin presided, and it was sought to have him enforce the order of Judge Hatch. He declined so to do, and on appeal his refusal was assigned as error. This court refused to entertain the contention, saying:

"As to the first error—in refusing to enforce the order of Judge Hatch in relation to the testimony asked for—if Judge Hatch had continued to sit in the case, when the testimony was offered, and if it had appeared to the judge that it was not competent testimony under the pleadings, he would have had a right to reject it notwithstanding his former order. No further limitations could be placed upon the power of Judge Rudkin, who succeeded him in the trial of the cause; and, as we view the law on this subject, the admission of such testimony would have constituted reversible error."

In *Toutle Logging Co. v. Hammond Lumber Co.*, 78 Wash. 568, 139 Pac. 625, almost the precise question here presented was determined. There the court sustained a challenge to the sufficiency of the evidence after it had refused to grant a nonsuit. On the appeal the action of the court was claimed to be erroneous on the ground that the court was without power to change its ruling. But the court denied the claim, saying that to sustain it would be to hold "that errors committed at one stage of the case could not be corrected by the trial court at a later stage therein," and that such was neither the rule nor the practice.

In *State v. Riley*, 36 Wash. 441, 78 Pac. 1001, a criminal case, the court overruled an objection to the admission of testimony based on the contention that the information did not state facts sufficient to constitute a crime. The defendant was convicted, and subsequently the court granted a new trial and permitted the prosecuting attorney to file another information against the defendant correcting the original information. A second conviction followed, and on the appeal therefrom it was contended that the ruling of the court holding the first information sufficient became the law of the case binding upon the superior court, and was not subject thereafter to modification or change by it. The court denied the contention, saying in the course of the opinion:

"It is not error for a court to allow the information to be withdrawn, and another more perfect one be substituted in its stead. *State v. Gile*, 8 Wash. 12, 35 Pac. 417; *State v.*

*Hansen,* 10 Wash. 235, 38 Pac. 1023; *State v. Lyts,* 25 Wash. 347, 65 Pac. 530. Nor was it error to do so after the court had first considered it and adjudged it sufficient. No litigant has a vested right to have an error perpetuated in the record. If the trial court finds, at any stage of the proceedings prior to the entry of final judgment, that it has committed an error that will render its final judgment voidable or void, it is not only its right but its duty to correct it."

The cases of *Weir v. Seattle Elec. Co.,* 41 Wash. 657, 84 Pac. 597, and *Messir v. McLean,* 51 Wash. 140, 98 Pac. 106, cited by the appellant, are not contrary to the principle announced in the foregoing cases. In these cases it was held that it was not within the province of the trial judge to take a cause from the jury and determine it upon conflicting evidence, however preponderating the evidence may have been in favor of the one party or the other; that he could, in the exercise of his discretion, grant a new trial if he thought the jury had decided against the weight of the evidence, but it was not held that he was without power before final judgment to correct at one stage of the trial an erroneous ruling made at an earlier stage therein.

The appellant further cites the case of *Forsyth v. Dow,* 81 Wash. 137, 142 Pac. 490, to the point that the court exceeded its power in granting the motion for judgment *non obstante.* It is contended, on the authority of that case, that, since the respondent's motion for nonsuit and challenge to the sufficiency of the evidence were overruled, and that the court made no direction that a judgment be not entered on the return of the verdict, the motion for judgment *non obstante* could not be entertained even though no formal judgment was entered by the clerk prior to the time the motion was interposed. The case cited, however, does not so hold. There the clerk entered judgment on the verdict immediately on its return by the jury, and the motion for judgment *non obstante* was made after the entry of such judgment, and it was held that the motion could not be entertained because of

the entry of a judgment on the verdict; holding, further, that the only right to move after the entry of judgment was the statutory right to move for a new trial, or to vacate under the provisions of the code relating to the vacation of judgments. Here the clerk did not enter the judgment the statute contemplates on the return of the verdict of the jury. The only judgment appearing in the record is the one appealed from, entered under the direction of the court after the motion for a judgment *non obstante* had been sustained. The fact that the right to a judgment on the return of the verdict existed, cannot be held to be the equivalent of the actual entry of a judgment.

But as the court cannot rightfully determine as a question of law a motion for nonsuit, a challenge to the sufficiency of the evidence, or a motion for a judgment notwithstanding a verdict, on the ground that the party holding the affirmative has failed to prove a cause for the jury where there is a substantial conflict in the evidence, it remains to inquire whether there is in this record any substantial evidence on which the verdict returned in his favor can be sustained.

The respondent is engaged in the manufacture and sale of farming machinery, and, in the conduct of its business, operates warehouses in the city of Spokane, where it receives shipments of such machinery in car load lots, and from whence it distributes such machinery in lesser lots throughout the surrounding country for the purposes of sale. At its warehouses it has a general manager and at least one general foreman, and employs a number of laborers who work under the direction of these officers. The appellant, at the time of the injury for which he sues, was one of such employees, and had been such for some three months prior thereto, although not steadily employed, having worked but some thirty-six days during that period. In the latter part of June, 1912, the respondent received at one of its warehouses two car loads of headers. These were shipped in a dismantled condition. In loading, the parts thereof called the platforms were first in-

serted in the cars.  These were left for carriage in their made up forms, and formed pieces some fourteen feet in length, four and one-half feet wide, and some three and one-half or four inches in thickness, and severally weighed five hundred and fifty pounds.  The platforms were the first pieces put into the cars.  In the process of loading, a platform was carried through the side door of the car and stood on its edge against the side of the car, with one end abutting against the end of the car; the second was then brought in and stood by the side of the first, and so on until all were loaded.  The cars carried seven headers each, and the platforms took up a space in the corner of the car equal to their height and length and about three feet in width.  The remaining room in the car was then packed with the remaining parts of the headers, which were contained in crates and boxes, in such manner as to form a compact mass which would remain in place during transit.

On the morning of June 27, 1912, the appellant and one Bittinger were directed by the general foreman to unload the cars.  They were told that, when they had removed the parts of the headers other than the platforms two other men would be sent to assist them.  In removing the headers, the parts had to be taken out practically in the same order in which they were placed in the cars, and it was in this manner that the appellant and Bittinger proceeded with the work of unloading.  By four o'clock in the afternoon they had succeeded in removing all the parts of the headers except the platforms, and at that hour two other employees were sent to assist them.  When the platforms had been put in place in loading, to steady them until they could be packed in with the remaining parts, binding twine had been used to fasten them to the wall of the car.  This had become broken during the transit, and to prevent their falling while the other parts were being removed, they were fastened in place 'in the one car by strands of baling wire tied to a nail driven in the wall of the car about midway of the length of the platforms and brought over their upper sides and then tied to a bolt on

the outside platform, and in the other by a scantling placed with one end against the outside platform and the other against the opposite wall of the car.

The workmen removed the platforms from the first car without accident. In doing so they would steady the platforms against the wall of the car, would then remove the wire from the outside platform and fasten it to a similar bolt on the next succeeding one; they would then throw out the end of the loosened platform next the car door so as to have a clearance space, raise up the end and place under the platform near its middle a small wheeled carrier, and would balance the platform on the carrier and then wheel it to its place of deposit in the warehouse.

After the first car had been thus unloaded, the appellant went after a drink of water. While he was absent the other workmen entered the second car and fastened the platforms (leaving the outer one free) to the side of the car in the same manner the platforms were fastened in the other car. They then removed the brace, loaded the free platform onto the carrier, and were wheeling it away when the appellant returned. The appellant did not assist in wheeling this platform into the warehouse, but remained in the car. He testified that, in order to get the next platform ready for removal on the return of the other workmen, he took the piece of scantling and pried out the bottom of the outside platform on the end next the door, and was proceeding to the other end to pry that out when the wire fastening gave way, allowing the platforms to fall over upon him, causing the injury for which he sues.

To sustain his right of recovery, the appellant contends that the work was of such a character as to require supervision by the master; that Bittinger was selected by the master as its representative for that purpose, and that he negligently performed his duties, in that he allowed the place of work to become unsafe by insecurely fastening the platforms to the wall of the car, and that the appellant's in-

juries were thus the result of the negligent performance of a duty enjoined upon the master. But we cannot accept these contentions as justified by the facts in evidence. Clearly there was nothing out of the ordinary in the nature of the work. It was such work as is commonly performed by men without direct supervision, and it would seem that if it legally required the presence of the master, there would be no character of work which required the cooperation of two or more workmen that the master is not required to supervise. The appellant does not claim that he was unaware of such dangers as existed in the work. This he could not well do, as there was nothing hidden or concealed about it. Moreover, he was a man of mature years, and had been engaged during the time of his employment with the respondent in work of a similar character, and had at one time at least assisted in removing similar platforms from the cars. Nor is there any evidence from which the jury were warranted in finding that the appellant was working under the supervision of Bittinger. They were both employed as common laborers, each received the same wages, and the order of the general foreman given to unload the cars was as much directed to the one as to the other. It may be true that, in the process of the work, Bittinger assumed to give such directions as were necessary to secure concert of action. But this does not make him the representative of the master. As we said in *Ponelli v. Seattle Steel Co.*, 64 Wash. 269, 116 Pac. 864:

"To hold that every time one servant suggests a plan for doing the work, or calls upon another servant to do something which in his judgment will facilitate the work, in making the suggestion or in directing the other servant, he becomes a vice principal and fixes a liability upon the master for any injury incurred in following the suggestion, or in accepting the direction where the duty of superintendence had not been intrusted to him by the master, would be to go further than any case with which we are familiar, and announce a new rule with no legal principle for its support."

See, also, *Jock v. Columbia & Puget Sound R. Co.*, 53 Wash. 437, 102 Pac. 405; *Desjardins v. St. Paul & Tacoma Lumber Co.*, 54 Wash. 278, 102 Pac. 1034; *Mercer v. Lloyd Transfer Co.*, 59 Wash. 560, 110 Pac. 389; *Cavelin v. Stone &. Webster Eng. Corp.*, 61 Wash. 375, 112 Pac. 349; *Swanson v. Gordon*, 64 Wash. 27, 116 Pac. 470.

As we view the record, there was no negligence shown on the part of the employer. The motion for judgment notwithstanding the verdict of the jury was therefore rightfully granted, and the judgment will stand affirmed.

MOUNT, MAIN, ELLIS, and CROW, JJ., concur.